Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
**CIARDI CIARDI & ASTIN, P.C.**
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA  19103
T (215) 557-3550
F (215) 557-3551
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com

**Attorneys for the Debtor**

## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | :     **CHAPTER 11** |
| THOMAS L. RIPLEY, SR., | : |
| | :     **BANKRUPTCY NO. 08-12390(JKF)** |
| | : |
| DEBTOR | : |
| | : |

## LIQUIDATING PLAN PROPOSED BY THOMAS L. RIPLEY, SR.
## DEBTOR-IN-POSSESSION

Dated: September 3, 2008

Thomas L. Ripley, Sr., Debtor-in-Possession, (the "Debtor") hereby propose the following Liquidating Plan (the "Plan") under chapter 11 of title 11 of the United States Code, as amended.

## ARTICLE I

### Definitions

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires.  Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

1.1	**ACCOUNTS RECEIVABLE"** means any account as that term is defined in Section 9106 of the Pennsylvania Uniform Commercial Code, 13 P.S. Section 1101, et seq. (the "PA U.C.C."), and includes any right of the Debtor to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper (as those terms are defined in the PA U.C.C.), whether or not it has been earned by performance.

1.2.	**"ADMINISTRATIVE CLAIM"**  means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code  and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.3	**"ADMINISTRATIVE CLAIMANT"** means the holder of an Administrative Claim.

**1.4** **"ALLOWANCE DATE"** means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

**1.5** **"ALLOWED"** The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

**1.6** **"ALLOWED CLAIM"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

**1.7** **"ASSETS"** means all of the Debtor's property, real and personal, tangible and intangible, including without limitation, real estate, investment, goods, chattel paper,

documents, instruments, money, fixtures, contract rights, causes of action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.8    **"BANKRUPTCY CODE"** means title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

1.9    **"BANKRUPTCY COURT" or "COURT"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

1.10  **"BANKRUPTCY RULES"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time promulgated by the Supreme Court of the United States.

1.11  **"BAR DATE"** means the last date fixed by Order of the Court for the filing of proofs of claim.

1.12  **"BUSINESS DAY"** means any day except a Saturday, Sunday, or other day on which commercial banks located in Philadelphia, are authorized by law to close.

1.13  **"BRISTOL ROAD PROPERTY"** means the property located at 3535 Bristol Road, Doylestown, Pennsylvania

1.14  **"CASE"** means the case of the Debtor originally filed under chapter 13 of the Bankruptcy Code and subsequently converted to Chapter 11 of the Bankruptcy Code presently captioned "In re Thomas L. Ripley, Sr., Case No. 08-12390(JKF)".

1.15  **"CAUSES OF ACTION"** means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

**1.16** **"CLAIM"** means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

**1.17** **"CLAIMANT"** A person or entity holding a Claim or Interest (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

**1.18** **"CLASS"** means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

**1.19** **"CONFIRMATION DATE"** means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Bankruptcy Code becomes a Final Order.

**1.20** **"CONFIRMATION HEARING"** means the hearing at which the Court considers confirmation of this Plan.

**1.21** **"CONFIRMATION ORDER"** means the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.22** **"CONTESTED CLAIM"** means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a claim which is scheduled as contingent or disputed.

**1.23** **"CREDITOR"** means the holder of a Claim against the Debtor.

**1.24** **"DEBTOR"** means Thomas L. Ripley, Sr.

**1.25** **"DEFICIENCY CLAIM"** means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed

Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

   **1.26**   **"DISBURSING AGENT"** has the meaning given to such term in Section 5.4 hereof.

   **1.27**   **"DISPUTED CLAIM"** means any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part before the Effective Date.

   **1.28**   **"DISTRIBUTION"** means any payment by the Debtor to a Creditor on account of a Claim.

   **1.29**   **"EFFECTIVE DATE"** means sixty days after the date upon which the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

   **1.30**   **"FEE CLAIM"** means a claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

**1.31**    **"FINAL ORDER"** means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

**1.32**    **"IMPAIRED CLASS"** means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.33**    **"INSIDER"** means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

**1.34**    **"LIEN"** means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

**1.35**    **"PERSON"** means a person within the meaning of Section 101(41) of the Bankruptcy Code.

**1.36**    **"PETITION DATE"** means April 10, 2008 the date upon which the petition was filed against the Debtor.

**1.37**    **"PETITION"** means the voluntary petition for relief filed by the Debtor commencing this proceeding.

**1.38**    **"PLAN"** means this Liquidating Plan, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

**1.39**    **"PLAN PROPONENT"** means the Debtor.

**1.40** **"PRIORITY NON-TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(3), (4), (5), (6)  or (7) of the Bankruptcy Code.

**1.41** **"PRIORITY TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

**1.42** **"PRO RATA"** means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

**1.43** **"PROPONENT"** means the Debtor.

**1.44** **"REJECTION CLAIM"** means any claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtor by Final Order.

**1.45** **"REORGANIZED DEBTOR"** means Thomas L. Ripley, Sr. , as reorganized and existing on the Effective Date.

**1.46** **"SCHEDULES"** means the schedules of assets and liabilities heretofore filed by the Debtor  with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as they maybe amended from time to time.

**1.47** **"SECURED CLAIM"** shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

**1.48** **"UNIMPAIRED CLASS"** means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.49** **"UNSECURED CLAIM"** means any Claim, whether or not disputed, liquidated or contingent, including a Rejection claim or a deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

## ARTICLE II

### Classification of Claims

For the purpose of this Plan, Claims are divided into the following classes. A Proof of Claim asserting a claim which is properly included in more than one class is included in each such class to the extent that it qualifies within the description of such class.

**2.1.**    **Class 1.** **Secured Claim of Bank of America, N.A.** Class 1 consists of the Allowed Secured Claim of Bank of America, N.A.. Class 1 claim is impaired under the Plan.

**2.2.**    **Class 2.** **Secured Claim of Madison Bank, Division of Leesport Bank**. Class 2 consists of the Allowed Secured Claim of Madison Bank, Division of Leesport Bank. Class 2 claim is not impaired under the Plan.

**2.3**    **Class 3.** **Secured Claim of The Ohio Casualty Insurance Co.** Class 3 consists of the Secured Claim of the Ohio Casualty Insurance Company. Class 3 is impaired under the Plan.

**2.4.**    **Class 4.** **Secured Claim of Bucks County Tax Claim Bureau.** Class 4 consists of the Allowed Secured Claim of Bucks County Tax Claim Bureau. Class 4 is not impaired under the Plan.

**2.5.    Class 5.  <u>Unsecured Claims</u>.**  Class 5 consists of the Allowed Unsecured claims.  Class 5 is impaired under the Plan.

**2.7    <u>Claims Classified</u>.**  For purposes of voting and all confirmation matters, except as otherwise classified herein, all Claims (except for Administrative Claims and Priority Tax Claims), are classified as set forth in this Article II of the Plan.

**2.8    <u>Administrative and Priority Tax Claims</u>.**  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article IV of this Plan.

## ARTICLE III

### <u>Treatment of Classes of Claim</u>

The treatment set forth in Article III shall be in full and final satisfaction and discharge of all claims of any creditor holding claims against the Debtor, his assets or properties.

**3.1    Class 1.  <u>(Secured Claim of Bank of America, N.A.)</u>**    The Class 1 creditor holds a first mortgage lien on the Bristol Road Property for $1,781,229.13.  The Debtor disputes the amount of the mortgage/lien. This class is impaired.  The Debtor intends on filing a motion to sell the Bristol Road Property to fund payment of the Bank of America, N.A. claim. The Debtor will have a binding agreement of sale for the Bristol Road Property by July 16, 2009 with a non-refundable deposit of at least ten (10%) percent of the sale price.  Closing of the sale of the Bristol Road Property shall be consummated within one (1) year from the date of the filing

of this Plan, and, in no event later than September 1, 2009. Distributions of the proceeds from the sale of the Bristol Road Property will be made to Bank of America, N.A. no later than October 1, 2009. If the Debtor does not obtain a binding agreement of sale for the Bristol Road Property by July 16, 2009, the Bristol Road Property will immediately be listed with a real estate auctioneer who will advertise and market the real estate for an auction to take place no later than September 16, 2009. Bank of America, N.A. will be entitled to credit bid for the Bristol Road Property.   If the Debtor obtains an agreement of sale for the Bristol Road Property by July 16, 2009, but the buyer does not close by September 1, 2009, the Bristol Road Property will immediately be listed with an auctioneer as set forth above with the auction to take place no later than sixty (60) days after such listing. Bank of America, N.A. will be entitled to credit bid for the Bristol Road Property.

The Debtor shall make no payments to Bank of America, N.A. on account of its claim until or if such claim is Allowed. Bank of America, N.A. shall retain its mortgages and liens on the Bristol Road Property until it has been satisfied in full.

### 3.2      Class 2.  (Secured Claim of Madison Bank, Division of Leesport Bank).  The Class 2 creditor holds a second mortgage lien on the Bristol Road Property in the amount of $531,406.72. Additional amounts continue to accrue on the claim. This class is not impaired. The Debtor intends on filing a motion to sell the Bristol Road Property to fund payment of the Madison Bank, division of Leesport Bank claim.  The Debtor shall satisfy the Madison Bank, division of Leesport Bank claim from the proceeds of the Bristol Road Property sale. Madison Bank, division of Leesport Bank shall retain its mortgage and lien on the Bristol Road Property until it has been satisfied in full.

The sale of the Bristol Road Property shall be consummated within one (1) year from the date of the filing of this Plan, and, in no event later than September 1, 2009. If the Debtor does not obtain a binding agreement of sale for the Bristol Road Property by July 16, 2009, the Bristol Road Property will immediately be listed with a real estate auctioneer who will advertise and market the real estate for an auction to take place no later than September 16, 2009. If the Debtor obtains an agreement of sale for the Bristol Road Property by July 16, 2009, but the buyer does not close by September 1, 2009, the Bristol Road Property will immediately be listed with an auctioneer as set forth above with the auction to take place no later than sixty (60) days after such listing. Any deficiency remaining on the claim shall be treated as a Class 5 claim.

### 3.3     Class 3.  (Secured Claim of The Ohio Casualty Insurance Co .). The

Class 3 creditor holds a third mortgage lien on the Bristol Road Property. The Debtor shall satisfy the secured claim of The Ohio Casualty Insurance Co. claim from the proceeds of the Bristol Road Property sale. The Ohio Casualty Insurance Co. shall retain its mortgage and lien on the Bristol Road Property until it has been satisfied in full.

The sale of the Bristol Road Property shall be consummated within one (1) year from the date of the filing of this Plan, and, in no event later than September 1, 2009. If the Debtor does not obtain a binding agreement of sale for the Bristol Road Property by July 16, 2009, the Bristol Road Property will immediately be listed with a real estate auctioneer who will advertise and market the real estate for an auction to take place no later than September 16, 2009. If the Debtor obtains an agreement of sale for the Bristol Road Property by July 16, 2009, but the buyer does not close by September 1, 2009, the Bristol Road Property will immediately be listed with an auctioneer as set forth above with the auction to take place no later than sixty (60) days after such listing. Any deficiency remaining on the claim shall be treated as a Class 5 claim.

**3.4**    **Class 4.  (Secured Claim of Bucks County Tax Claim Bureau).**  Class 4 creditor holds a lien against the Bristol Road Property for real estate taxes in the amount of $5,963.30.  Additional amounts continue to accrue on the claim. This class is not impaired.  The Debtor shall satisfy the Bucks County Tax Claim Bureau claim from the proceeds of the Bristol Road Property sale.

**3.5**    **Class 5. (Unsecured Creditors).**    Class 5 is impaired.  The Class 5 creditors, after payment in full of all Secured Claims, Priority Tax Claims, Administrative Claims and the Debtor's exemptions, shall receive all net proceeds from the Bristol Road Property in full satisfaction of their respective Allowed Claims.

## ARTICLE IV

### Treatment of Unclassified Claims

**4.1**    **Administrative Claims**.  All Administrative Claims shall be treated as follows:

a.    Time for Filing Administrative Claims.  The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within (30) days after the Confirmation Date.  Such notice must include at minimum (i) the name of the holder of the claim, (ii) the amount of the claim and (iii) the basis of the claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

b.    Time for Filing Fee Claims.  Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within sixty (60) days after the

Effective Date.  Failure to file the fee application timely shall result in the fee claim being forever barred and discharged.

        c.        <u>Allowance of Administrative Claims</u>.  An Administrative Claim with respect to which notice has been properly filed pursuant to Section 4.1(a) this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim.  If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

        d.        <u>Payment of Allowed Administrative Claim</u>.  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

        e.        <u>Professional Fees Incurred After the Effective Date</u>.  Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid.  Any dispute which may arise with regard to  professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

f.      Carve out of Professional Fees for Payment to Ciardi Ciardi &

Astin, P.C.  Ciardi Ciardi & Astin, P.C. shall have a carve out of $45,000.00 from the sale of the

Bristol Road Property for the payment of its professional fees.

**4.2      Treatment of Priority Tax Claims**.  Each holder of an Allowed

Priority Tax Claim shall receive payment of the amount of such holder's Allowed Claim, plus

interest accruable at the applicable statutory rate, in equal monthly cash payments in accordance

with the provisions of Subsection 1129(a)(9)(c) of the Bankruptcy Code commencing on the

Effective Date (as recently amended).

## ARTICLE V

### Provisions For Execution of The Plan

**5.1.      Plan Funding.**

**A.      The Sale of the Bristol Road Property.**

The Debtor intends on selling the Bristol Road Property which will create a mechanism

to pay the secured creditors, taxes in full at closing, administrative claims in full, and fund a

distribution.  The sale of the Bristol Road Property shall be consummated within one (1) year

from the date of the filing of this Plan, and, in no event later than September 1, 2009.  If the

Debtor does not obtain a binding agreement of sale for the Bristol Road Property by July 16,

2009, the Bristol Road Property will immediately be listed with a real estate auctioneer who will

advertise and market the real estate for an auction to take place no later than September 16, 2009.

If the Debtor obtains an agreement of sale for the Bristol Road Property by July 16, 2009, but the

buyer does not close by September 1, 2009, the Bristol Road Property will immediately  be listed

with an auctioneer as set forth above with the auction to take place no later than sixty (60) days

after such listing.  If a sale is not consummated as outlined above, the Bristol Road Property will

be auctioned and all proceeds will be used to satisfy the allowed claims.  To the extent the

auction does not yield enough money to satisfy all claims in full, the creditors will share pro-rata

in the distribution.  The amount of distribution to unsecured creditors is incalculable at this time.

Debtor will have a more precise number at a later time after all creditors have timely filed claims

and the closing costs have been fixed and determined.

### B.    OTHER ASSETS

**The other available assets which may be liquidated to pay unsecured creditors are
listed below.**

i.    **Tangible Personal property of the Debtor**.  The Debtor

owns personal property as tenants by the entireties with his spouse which has a value of

$84,000.  Most of the personal property consists of household items that if sold, after

excluding the spouse's share of proceeds, would result in scant value.  Therefore, the

Debtor intends to retain the personal property because the costs of liquidating it would

exceed any value.

**5.2    Execution of Documents.** Prior to the Effective Date, the Debtor is

authorized and directed to

execute and deliver all documents and to take and to cause to be taken all action necessary or

appropriate to execute and implement the provisions of this Plan.

**5.3    Alteration of Plan.**  This Plan may be altered, amended, or modified by

the Proponent before or after the Confirmation Date, as provided in Section 1127 of the Code.

**5.4    Disbursing Agent.**  Thomas L. Ripley, Sr. shall be the Disbursing Agent

herein ("Disbursing Agent").  The Disbursing Agent shall have the sole and exclusive right to

make the distributions required by the Plan.  The Disbursing Agent may hold or invest the funds

in one or more accounts, provided that all investments shall be made in accordance with 11

U.S.C. §345.   The Disbursing Agent will obtain a bond in an amount approved by the Court.

The Disbursing Agent will be compensated for his duties as Disbursing Agent from the funds

available for Class 5.

     **5.5**     **Substantial Consummation of Plan.**  After the distribution to Class 5

creditors is made and the plan has been substantially consummated, the Disbursing Agent or the

Debtor shall file a Motion to close the case and request that a final decree be issued.


**ARTICLE VI**

**<u>Additional Provisions Applicable To All Classes</u>**

     **6.1**   The payments, distributions and other treatments provided in respect of each

Allowed Claim and Allowed Interest in the Plan shall be in full settlement and complete

satisfaction discharge and release of such Allowed Claim and Allowed Interest.

     **6.2**   Notwithstanding any of the provisions of the Plan specifying a date or time

for the payment or distribution of consideration hereunder, payments and distributions in respect

of any Claim or Interest which at such date or time are disputed, unliquidated or contingent shall

not be made until such Claim or Interest becomes an Allowed Claim or an Allowed Interest,

whereupon such payment and distribution shall be made promptly pursuant to and in accordance

with this Plan.

# ARTICLE VII

## Provisions Governing Distributions and General Provisions

**7.1**   Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as soon as practicable thereafter or as may be otherwise ordered by the Court.

a.   Delivery of Distributions.  Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address).  If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest.  All claims for undeliverable distributions must be made to the Disbursing Agent within ninety (90) days after the respective distribution was made.  After that date, all unclaimed property will become property of the Reorganized Debtors, and the Claim of any holder with respect to such property will be discharged and forever barred.

b.   Means of Cash Payment.  Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.  All cash distributions will be made by the Disbursing Agent.

c.   Time Bar to Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of their issuance.  Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim in respect of such a voided check must be made on or before ninety (90) days after the date of issuance of the check.  After the date, all claims in respect of void checks will be discharged

and forever barred and the cash, including interest earned shall be the property of the Reorganized Debtor.

      d.    <u>Setoffs</u>.  The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any claims of any nature whatsoever the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such claimant.

      e.    <u>De Minimis Distributions</u>.  No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to Debtors  to make such a payment.

      f.    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

    **7.2**   Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified  mail, return receipt requested, and if sent to:

      (a)    If to the Reorganized Debtor, addressed to:

          Thomas L. Ripley, Sr.
          3535 Bristol Road
          Doylestown, Pennsylvania 18901

(b)      With copies to Counsel:

> Albert A. Ciardi, III, Esquire
> Nicole M. Nigrelli, Esquire
> Ciardi Ciardi & Astin P.C.
> 2005 Market Street
> One Commerce Square, Suite 1930
> Philadelphia, PA  19103

**7.3**   No default shall be declared under this Plan unless any payment due under this Plan shall not have been made within 30 days after written notice to the Reorganized Debtor and counsel for the Debtor of failure to make payment when due under the Plan.

## ARTICLE VIII

### Effect of Confirmation

**8.1   Injunction.**  Except as otherwise provided in the Plan or the Financing Order, the Confirmation of the Plan shall act to permanently enjoin on or after the Confirmation Date, all persons who have held, hold or may hold Claims of or Interests in or against the Debtor and the Reorganized Debtor (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim or Interest, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor thereof, or against the property, or against the property of the Debtor, with respect to any such Claim or Interest.

**8.2      Term of Injunctions or Stays.**  Unless otherwise provided in this Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the

Code or otherwise and extant on the Confirmation Date shall remain in full force and effect, until such time as the Bankruptcy Court orders otherwise. Upon the occurrence of a default hereunder, creditors shall have the right to seek relief from the stays and/or termination of the injunctions provided for herein.

      **8.3**    **Injunction Against Interference With Plan.**  Except as otherwise permitted under the Plan, no entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

## ARTICLE IX

### Executory Contracts

      **9.1**    **Rejection**. All executory contracts and unexpired leases that are not assumed as of the Confirmation Hearing or rejected during this case shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code as of the Confirmation Hearing.

      **9.2**    **Damages**. Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the Clerk of the Court within thirty days after the date of rejection. If a Rejection Claim becomes an Allowed claim then it shall constitute a general unsecured claim under Class 6 as approved.

## ARTICLE X

### Cramdown Provisions and Confirmation Request

      **10.1**    **Cramdown.**  In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

## ARTICLE XI

### Modification of the Plan

**11.1  Pre-Confirmation Modification.**  At any time before the Confirmation Date, the Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

**11.2  Pre-consummation Modification**.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

**11.3  Non-Material Modifications.**  At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## ARTICLE  XII

### Retention of Jurisdiction

**12.1**    The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a) to determine any and all objections in the allowance of claims and amendments to schedules;

(b) to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c) to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d) to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e) to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f) to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g) to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h) to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)      to enforce all discharge provisions under the Plan;

(l)      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## ARTICLE XIII

## Causes of Action

**13.1    Suits, Etc.**  Except as otherwise provided in this Plan, the Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under non-bankruptcy law or under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action.

**13.2    Powers.**  The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

## ARTICLE XIV

## Miscellaneous

**14.1    Choice of Law.**  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

**14.2    Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.

**14.3    Discharge of Debtor**.  Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, any of his assets or properties and the Debtor's Estate.  Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtor, successors, or his assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

**14.4    Discharge of Claims; Injunction**.  The rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtor, the estate or any of his Assets, and upon the Effective Date, all existing Claims against the Debtor, the estate and all of his assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of claims shall be precluded and enjoined from asserting against the Debtor, the Reorganized Debtor, the Disbursing Agent, his successors or his respective Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the holder filed a proof of claim.

**14.5    Effect of Confirmation Order**.  Except as provided in Section 1141(d) of the Bankruptcy Code and except as otherwise provided in this Plan, the provisions of the Plan and the Confirmation Order shall bind the Reorganized Debtor and all holders of claims or interests and will be a judicial determination of discharge of the Debtor from all debts that arose

before the Confirmation Date and any liability on a Claim that is determined under Section 502

of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or

not a proof of claim based on any such date or liability is filed under Section 501 of the

Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under

Section 502 of the Bankruptcy Code and whether or not such holder is impaired under the Plan

and whether or not such holder has accepted the Plan, and shall terminate all rights, claims and

interests of such holder, except as provided in the Plan.

      **14.6**   **Sale of Real Property.**  The Sale of the Bristol Road Property shall

constitute a "transfer under a plan" within the purview of Section1146(a) of the Bankruptcy Code

and shall not be subject to transfer stamp or similar taxes imposed by any federal, state or local

authority including, without limitation, any tax imposed under the Pennsylvania Realty Transfer

Tax.  In order to effectuate the provisions of Section 1146(a) of the Bankruptcy Code, the

Confirmation Order shall order and direct the Recorder of Deeds of Bucks County to promptly

record any deed to any third party without any transfer tax.

      **14.7**   **Severability**.  Should any provision in this Plan be determined to be

unenforceable, that determination will in no way limit or affect the enforceability and operative

effect of any provision of the Plan.

      **14.8**   **Successors and Assigns**.  The rights and obligations of any person named

or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors

and assigns of that Person.

      **14.9**   **Binding Effect**.  The Plan will be binding upon and inure to the benefit of

the Debtor, his Creditors, the holders of Equity Interests, and his respective successors and

assigns.

**14.10   <u>Withholding and Reporting Requirements</u>.**  In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

## ARTICLE XV

### <u>Provisions for Resolving and Treating Claims</u>

**15.1   <u>Objections</u>.**  Within sixty (60) days after the Confirmation Date, all objections to Claims will be filed with the Court and served on the holders of each of the Claims to which objections are made.  If no objection to a claim is filed within sixty (60) days after the Confirmation Date, the claim will be deemed allowed.

**15.2   <u>Prosecution of Objections</u>.**  After the date of entry of the Confirmation Order, only the Debtor will have authority to file objections, litigate to judgment, settle or withdraw objections to Contested Claims.

**15.3   <u>No Distributions Pending Allowance</u>.**  No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim.  If only a portion of a claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the claim, pending resolution of the portion which is disputed.

**15.4   <u>Distributions After Allowance</u>.**  Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the

respective holder belongs as soon as practicable after the date that the order or judgment of the

Court allowing the Claim becomes a Final Order.


**THOMAS L. RIPLEY, SR.**

Dated: September 3 , 2008          By:    /S/Thomas L. Ripley, Sr.


**CIARDI CIARDI & ASTIN P.C.**

By:    /S /Nicole M. Nigrelli
       Albert A. Ciardi, III, Esquire
       Nicole M. Nigrelli, Esquire
       One Commerce Square, Suite1930
       2005 Market Street
       Philadelphia, PA  19102
       Telephone: (215) 557-3550
       Facsimile: (215) 557-3551
       aciardi@ciardilaw.com
       nnigrelli@ciardilaw.com