# Exhibit A

# TERMS FOR DEBTOR IN POSSESSION FINANCING FOR
# PENN TREATY HOMES LLC, 1121 PIER VILLAGE LLC and 2626 FRANKFORD LLC

| **Lender** | An entity associated with 724 Group Investments, LLC and DIO Industrials LLC |
|---|---|
| **Borrowers** | Penn Treaty Homes LLC, 1121 Pier Village LLC and 2626 Frankford LLC, as debtors and debtors in possession (collectively, the "Debtors") in the chapter 11 cases jointly administered at Case No. 21-11466 in the Bankruptcy Court for the Eastern District of Pennsylvania (the "Cases"), jointly and severally. |
| **Transaction** | A DIP Facility multi-draw term loan made available by Lender to Borrowers |
| **Purposes** | To extend to the Borrowers, during the pendency of the Cases, credit in the amount of $800,000, plus any default margin or costs, of which up to $700,000 may be drawn in cash draws for expenditures consistent with the Approved Budget (defined below). Proceeds of the DIP Facility shall be available to (1) fund working capital requirements, operating expenses, capital expenditures, administrative expenses of the Cases and other line items of the Borrowers, including but not limited to demolition and permitted pre-petition payments, all in accordance with a 13-week budget, and any continuation budgets, to be prepared and updated weekly by Borrowers and approved by Lender (the "Approved Budget"); (2) fund the payment of interest accrued on the DIP Facility; and (3) pay the fees and expenses of Lender related to the DIP Facility and the Cases, including, without limitation, diligence fees and costs, and fees of attorneys and other professional advisors.<br><br>The proceeds of the DIP Facility shall not be used in any manner, or transferred to any person or entity, except as permitted by Lender or as set forth in the Approved Budget. |
| **Advances** | Each advance under the DIP Facility shall be consistent with the Approved Budget (or otherwise approved by Lender), and shall be subject to usual and customary conditions precedent for facilities of this nature. |
| **DIP Facility Amount** | Up to $800,000, plus any default margin or costs, of which up $700,000 may be drawn for cash outlays by the Borrower as provided for by the Approved Budget, and the balance shall be reserved for pay-in-kind fees, interest and reimbursable lender costs. |

| | |
|---|---|
| **Interest Rate** | 9.9% fixed rate, paid in kind, increasing automatically to 11.9% upon occurrence of an Event of Default (defined below). All accrued and unpaid interest shall be payable by Borrower to the DIP Lender on the Termination Date. All computations of interest payable hereunder shall be on the basis of a three hundred sixty (360)-day year consisting of twelve (12) thirty (30)-day months and actual days elapsed in the period of which such interest is payable. |
| **Loan Payments** | Except as otherwise provided herein, all unpaid principal, interest, fees, costs and expenses on the DIP Facility shall be due and payable in full by the Debtors on the Termination Date, whether at maturity, upon acceleration or otherwise. |
| **Collateral** | 1. First priority (priming), open-end mortgage on all of Borrowers' real property. Lender shall have the option to obtain title insurance on such real property.<br><br>2. First priority (priming) security interests in all assets of Borrowers, including, without limitation, any proceeds of, or property and interests recovered in respect of, claims and causes of action arising under Chapter 5 of the Bankruptcy Code.<br><br>The obligations under the DIP Facility shall be entitled to superpriority administrative claim status in the Cases, and such claims and all security interests and liens shall be senior in priority to the claims and liens in favor of Borrowers' pre-petition lender(s) and any other person or entity other than (i) claims for post-petition professional fees incurred prior to the termination of the DIP Facility, (ii) fees of the Clerk of the Bankruptcy Court, and (iii) fees of the United States Trustee (collectively, the "Carve Out", in an aggregate amount not to exceed the line items set forth in the Approved Budget.<br><br>Upon entry of the Final Order approving the DIP Facility and subject to the Carve Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time may be charged against the Lender or its claims or collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise. |
| **Lien Validation and Perfection** | All liens authorized and granted pursuant to the Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility shall be deemed effective and perfected as of the date of such Order, and no further filing, notice or act will be required to effect such perfection. |

| | |
|---|---|
| **Fees** | Origination fee of $30,000 (paid in kind as a draw at origination) |
| **Expenses** | Borrowers shall pay all costs and expenses of Lender in connection with the preparation and execution of DIP Facility, including, without limitation, reasonable and documented attorneys' fees and related travel expenses incurred prior to the Closing Date. Borrowers also agree to pay all costs and expenses of Lender, including reasonable attorneys' fees actually incurred, in connection with amendments, consents, waivers and terminations in connection with the DIP Facility. Borrowers also agree to pay all reasonable costs and expenses of Lender, including reasonable attorneys' fees actually incurred, and including the fees of any third party engaged by the Lender to assist in the collection of the indebtedness under the DIP Facility, in connection with the enforcement, protection, defense and collection of this Term Sheet, the Definitive DIP Documentation, the security interests granted to Lender and the indebtedness under the DIP Facility. This includes, subject to any limits under applicable law, the reasonable attorneys' fees and legal expenses of the Lender actually incurred, whether or not there is a lawsuit, including reasonable attorneys' fees actually incurred for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrowers will pay any court costs, in addition to all other sums provided by law. Unless an Event of Default has occurred and is continuing, all of the foregoing expenses shall be capped at $100,000 (paid in kind as an incremental draw on the DIP Facility).  Upon the occurrence and continuation of an Event of Default, Borrower shall pay all of the actual and documented foregoing expenses without limitation. |
| **Termination Date** | The earliest of the following: (i) the date that is one hundred eighty (180) days after the closing date of the DIP Facility (the "<u>Maturity Date</u>"); (ii) the effective date of a Chapter 11 plan of Borrowers; (iii) the consummation of the sale of any real property asset or material personal property unless the Lender in its sole discretion waives the treatment of such event as maturing the loan; or (iv) the acceleration of the indebtedness under the DIP Facility, including, without limitation, as a result of the delivery of a notice of an Event of Default. |

| | |
|---|---|
| **Milestones** | By the dates set forth below (the "Milestones") (any of which may be extended with Lender's consent), Borrowers shall cause the following to occur:<br><br>• File motions to approve DIP Facility and to approve bid procedures: September 1, 2021<br><br>• Entry of a final order approving DIP Facility and orders approving bid procedures, which shall designate an entity associated with Lender as the stalking horse bidder for the assets of 1121 Pier Village LLC and Penn Treaty Homes LLC, and an entity associated with Lender as the stalking horse bidder for the assets of 2626 Frankford LLC (collectively the "Assets): September 27, 2021<br><br>• Competing bid deadline for the Assets: October 29, 2021<br><br>• Auction of the Assets: November 3, 2021<br><br>• Hearing to approve sale of the Assets: November 5, 2021<br><br>• Entry of order approving the sale of the Assets: November 8, 2021<br><br>• Closing on the Assets: As soon as practicable after entry of the order approving sale, but no later than November 30, 2021 |
| **Conditions Precedent** | 1. The closing of the DIP Facility shall be subject to (a) approval of the Approved Budget by the Lender, together with all financial information requested by the Lender, all in form and substance satisfactory to the DIP Lender in its sole discretion, (b) entry of an Interim Order and/or Final Order, as applicable, approving the DIP Facility, its superpriority administrative claims and all first priority (subject only to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least 5 days' notice to the Debtors and the United States Trustee, results in the Lender exercising certain rights and remedies against the Collateral, which Interim Order or Final Order, as applicable, shall not have been modified or amended without the approval of the |

| | |
|---|---|
| | Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the Lender in its sole discretion, (c) the Lender's approval of all material motions and orders filed in the Cases requiring the expenditure of cash, (d) there shall be clean title searches as to all Collateral, other than as waived by Lender in its sole discretion, and (e) there shall have been no material adverse change. |
| **Additional Conditions to Each Borrowing Under the DIP Facility** | There shall exist no default (or event that would constitute a default with the giving of notice or lapse of time) hereunder, and the representations and warranties herein shall be true and correct in all material respects. There shall have occurred no material adverse change in the Debtors' (financial, environmental, or otherwise) operations, performance, or properties since the date of this Term Sheet, that, in the reasonable judgment of the DIP Lender, has or can reasonably be expected to have a material adverse effect on the rights and remedies of the Lender or on the ability of the Debtors to perform their obligations to the Lender under the DIP Facility. The Lender shall be reasonably satisfied that Debtors are continuing to take action and demonstrating progress toward the Milestones and commercially reasonable progress on the Projects (as defined in the Debtors' motion to approve the DIP Facility). |
| **Representations and Warranties** | The representations and warranties of Debtors are set forth on Exhibit A attached hereto. |
| **Affirmative and Negative Covenants** | The covenants are set forth on Exhibit B attached hereto. |
| **Events of Default** | Customary events of default, including, without limitation, the following:<br>1. Borrowers' failure to pay when due any principal (whether by scheduled maturity, required redemption, acceleration, demand or otherwise), interest or other amounts under the DIP Facility;<br>2. Noncompliance with covenants or breaches of representations and warranties contained in the exhibits hereto;<br>3. Any material adverse change with respect to any of the Borrowers; |

|  |  |
|---|---|
|  | 4. The entry by the Bankruptcy Court of an order with respect to any Case that (i) revokes, reverses, stays, modifies, supplements or amends the Interim Order and/or Final Order, except as consented to by the DIP Lender, (ii) permits any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal or superior to the priority of the claims and liens of Lender, (iii) grants or permits the grant of a lien to any other party on any collateral securing the DIP Facility; or (iv) dismisses or converts any of the Cases to a case under chapter 7 of the United States Bankruptcy Code, appoints a chapter 11 trustee, or appoints a receiver, responsible officer or examiner with enlarged powers relating to the operation of the business of any Borrower;<br>5. The noncompliance by any DIP Borrower of any material provision of the Interim Order or Final Order;<br>6. Any change of control or ownership of any of the DIP Borrowers or the effectiveness of any agreement or commitment to cause or which may result in such a change of control;<br>7. Any action shall be commenced seeking to challenge the validity or enforceability of all or any portion of the DIP Facility, the obligations thereunder or any part thereof (including any lien or security interest granted in favor of Lender);<br>8. Filing or support of a proposed plan of reorganization by Debtors that does not provide for the indefeasible payment in full of Debtors' obligations outstanding under the DIP Facility, unless otherwise agreed in writing by the DIP Lender in its sole discretion;<br>9. Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the DIP Lender in its sole discretion;<br>10. The Debtors fail to disburse the sale proceeds to the Lender contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out, unless Lender is the purchaser of such assets and has credit bid the obligations under the DIP Facility; or |

| | |
|---|---|
| | 11. Borrowers' failure to make commercially reasonable progress on the Projects (as defined in the Debtors' motion to approve the DIP Facility). |
| **Remedies Upon Default** | Following the Termination Date, or upon the occurrence and during the continuance of an Event of Default, Lender shall have customary remedies, including, without limitation, the right to realize on all DIP Collateral, the right to exercise any remedy available under applicable law, without the necessity of obtaining any further relief or order from the Bankruptcy Court.  Consistent with the foregoing sentence, section 362 relief from the stay in favor of the Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral. The Bankruptcy Court shall retain non-exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under the this Term Sheet, the Interim Order, the Final Order and with respect to the collateral. |
| **Amendments/Waivers** | Amendments, waivers and modifications to the terms of the DIP Facility will require consent of Lender. |
| **Indemnification** | Borrowers shall jointly and severally indemnify, defend and hold harmless Lender, its affiliates and each of the respective officers, directors, members, partners, employees, advisors, attorneys and representatives of each (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in respect of or referring to any investigation, litigation or proceeding or the preparation of any defense in connection therefor), in each case arising out of or in connection with or by reason of the DIP Facility or any of all transactions contemplated hereby, or any actual or proposed use of the proceeds of the DIP Facility, except, to the extent such claim, damage, loss, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's gross negligence or willful misconduct.  In the case of an investigation, litigation or other proceedings to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any Borrower, any of their directors, security holders or creditors, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated. Borrowers further agree that no Indemnified Party shall have |

|  | any liability (whether direct or indirect, in contract, tort, or otherwise) to Borrowers or any of their security holders or creditors for or in connection with the transactions contemplated hereby, except for direct damages (as opposed to special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings)) determined in a final judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's gross negligence or willful misconduct. |
|---|---|
| **Governing Law** | All documentation in connection with the DIP Facility shall be governed by the laws of the Commonwealth of Pennsylvania, subject to applicable federal bankruptcy laws. |
| **Credit Bid** | Subject to Section 363(k) of the Bankruptcy Code, Lender shall have the unqualified right to credit bid up to the full amount of the obligations under the DIP Facility in any sale of the Collateral, without the need for further Court order authorizing the same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise. |

This term sheet shall be governed by, and construed and interpreted in accordance with, the law of the Commonwealth of Pennsylvania.  The Debtors consent to the nonexclusive jurisdiction and venue of the state or federal courts located in Philadelphia County.  Each party hereto irrevocably waives, to the fullest extent permitted by applicable law, (a) any right it may have to a trial by jury in any suit, action, claim, counterclaim or other proceeding arising out of or relating to this letter agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory) or the performance of services hereunder and (b) any objection that it may now or hereafter have to the laying of venue of any such legal proceeding in the state or federal courts located in Philadelphia County.

This term sheet embodies the entire agreement among the parties hereto and supersedes all prior commitments, agreements, representations, and understandings, whether oral or written, relating to the subject matter hereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto.  All Exhibits referred to herein are incorporated in this term sheet by reference and constitute a part of this term sheet.  This term sheet and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which counterparts together shall constitute but one in the same instrument.  This term sheet shall become effective upon the execution of a counterpart hereof by each of the parties hereto.

In the event of a conflict between the terms of this Term Sheet and the Interim Order or Final Order, as applicable, the Interim Order or Final Order shall control.

Dated: September 1, 2021

_____, as Lender

PENN TREATY HOMES LLC, 1121 PIER VILLAGE LLC AND 2626 FRANKFORD LLC, as Borrowers

By: _____
Name:
Title:

By: _____
Name:
Title:  Manager of Gotham Deeds LLC and Gotham Bedrock LLC, Managers of Borrowers

## Exhibit A

Representations and Warranties

To induce the Lender to enter into the Term Sheet and to make advances under the DIP Facility, Borrowers represent, warrant and covenant to Lender that the following statements are true, correct and complete as of the date hereof. References to the knowledge or awareness of Borrowers are deemed to include the actual knowledge of any officer or director of Borrowers after due inquiry.

**1.1    Disclosure**. No representation or warranty of Borrowers contained in this Term Sheet or any other document, certificate or written statement furnished to Lender by or on behalf of Borrowers for use in connection with the DIP Facility contains any untrue statement of a material fact or omitted, omits or will omit to state a material fact necessary in order to make the statements contained herein or therein not misleading in light of the circumstances in which the same were made.

**1.2    No Conflict; Compliance**. The consummation of the transactions contemplated by this Term Sheet does not and will not violate or conflict with any laws, rules, regulations or orders of any governmental authority or violate, conflict with, result in a breach of, or constitute a default (with due notice or lapse of time or both) under any contractual obligation or organizational documents of Borrowers. Borrowers are each in compliance with the requirements of all applicable laws, rules, regulations and orders of any governmental authority and the obligations, conditions and covenants contained in all contractual obligations other than those laws, rules, regulations, orders and provisions of such contractual obligations the noncompliance with which could not be reasonably expected to have, either individually or in the aggregate, a material adverse effect, and (ii) maintain all licenses, qualifications and permits necessary for the conduct of their respective businesses and the Projects.

**1.3    Organization, Powers, Capitalization, Subsidiaries and Good Standing**.

**(a)    Organization and Powers**. Borrowers are duly organized, validly existing and in good standing under the laws of their jurisdiction of organization and qualified to do business in all states where such qualification is required except where failure to be so qualified could not reasonably be expected to have a material adverse effect. Borrowers have all requisite organizational power and authority to own and operate their respective properties, to carry on their respective business as now conducted and proposed to be conducted, to enter into this Term Sheet and to incur the obligations under the DIP Facility, grant liens and security interests in the Collateral, and carry out the transactions contemplated by this Term Sheet.

**(b)    Binding Obligation**. This Term Sheet is, and any other DIP Facility Documents when executed and delivered will be, the legally valid and binding obligations of the applicable parties thereto, each enforceable against each of such parties, as applicable, in accordance with their respective terms.

**1.4    Budget**. The Approved Budget, and all other financial documents and reports concerning Borrowers which have been or will hereafter be furnished to Lender hereunder have been or will be prepared in accordance with GAAP consistently applied (except as disclosed

therein) and do or will present fairly in all material respects the financial condition of the entities covered thereby as at the dates thereof and the results of their operations for the periods then ended.

**1.5** **Use of Proceeds.**

**(a)** Borrowers shall utilize the proceeds of the DIP Facility solely for the financing of Borrower's working capital needs during the Cases in accordance with the Approved Budget.

**1.6** **Chapter 11 Cases.** The Cases were commenced on the Petition Date in accordance with applicable law and proper notice thereof and of the hearing for the approval of the Interim Order and Final Order shall be provided as required by the Federal Rules of Bankruptcy Procedure and any applicable local rules of procedure.

**Exhibit B**

Affirmative and Negative Covenants

## SECTION 1
## AFFIRMATIVE COVENANTS

Borrowers covenant and agree that from and after the date hereof and until the Termination Date:

**1.1** **Compliance With Laws and Contractual Obligations**. The Debtors will (a) comply with (i) the requirements of all applicable laws, rules, regulations and orders of any governmental authority (including, without limitation, laws, rules, regulations and orders relating to taxes, employer and employee contributions, securities, employee retirement and welfare benefits, environmental protection matters and employee health and safety) as now in effect and which may be imposed in the future in all jurisdictions in which the Debtors are now doing business or may hereafter be doing business and (ii) the obligations, covenants and conditions contained in all contractual obligations of the Debtors other than those laws, rules, regulations, orders and provisions of such contractual obligations the noncompliance with which could not be reasonably expected to have, either individually or in the aggregate, a material adverse effect, and (b) maintain or obtain all licenses, qualifications and permits now held or hereafter required to be held by Debtors, for which the loss, suspension, revocation or failure to obtain or renew, could reasonably be expected to have, either individually or in the aggregate, a material adverse effect.

**1.2** **Maintenance of Properties; Insurance**. Except for contemplated demolition pursuant to the Approved Budget, Debtors will maintain or cause to be maintained in good repair, working order and condition all material properties constituting Collateral and will make or cause to be made all appropriate repairs, renewals and replacements thereof, ordinary wear and tear excepted. Debtors will maintain or cause to be maintained, with financially sound and reputable insurers, customary public liability and property damage insurance with respect to its properties in amounts reasonably acceptable to Lender and will deliver evidence thereof to Lender.

**1.3** **Inspection; Lender Meeting**. Borrower shall permit any authorized representatives of Lender to visit, audit and inspect any of Debtors' properties, including financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtors' affairs, finances and business with Debtors' officers and professional advisors, at such reasonable times during normal business hours and as often as may be reasonably requested.

**1.4** **Organizational Existence**. Debtors will at all times preserve and keep in full force and effect their organizational existence and all rights material to their respective business and properties.

**1.5** **Bankruptcy Information**. Promptly after the same is available, Debtors shall promptly deliver to and discuss with the Lender and its counsel any and all information and developments in connection with the proposed section 363 sale of the Debtors' assets, and any other event or condition which is reasonably likely to have a material effect on the Debtors or the Cases, including, without limitation, the progress of any disclosure statement or any proposed chapter 11 plan of reorganization.

**1.6** **Milestones**.  The Debtors shall comply with the Milestones.

**1.7** **Proceeds of 363 Sale**.  In the event that (i) Lender is not the purchaser of substantially all of the Debtors' assets, or (ii) Lender is such purchaser but does not credit bid the outstanding obligations under the DIP Facility, then, contemporaneously with closing a sale of substantially of all of its assets, the Debtors shall remit cash in an amount equal to the lesser of (a) the net proceeds of such sale or (b) the outstanding amount of the obligations under the DIP Facility, to the Lender for immediate application to the obligations owed to the Lender, subject to payment of the Carve Out.

## ARTICLE 2
## NEGATIVE COVENANTS

Debtors covenant and agree that from and after the date hereof until the Termination Date:

**2.1** **Indebtedness; Payments; Budget**.  Debtors shall not directly or indirectly to create, incur, assume, or otherwise become or remain directly or indirectly liable with respect to any indebtedness or make any payments to any person other than as set forth on the Approved Budget.

**2.2** **Liens.**  Debtors shall not directly or indirectly create, incur, assume or permit to exist any lien on or with respect to any of Debtors' property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except in favor of Lender.

**2.3** **Investments**.  Debtors shall not directly or indirectly make or own any investments except as permitted by the Bankruptcy Court.

**2.4** **Disposal of Assets**.  Debtors shall not directly or indirectly convey, sell, lease, sublease, transfer or otherwise dispose of, or grant any person an option to acquire, in one transaction or a series of related transactions, any of its property, business or assets, whether now owned or hereafter acquired, except as set forth in a sale order approved by the Bankruptcy Court.