**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **1121 PIER VILLAGE LLC,** | : | Lead Case No. 21-11466 (ELF) |
| **PENN TREATY HOMES LLC,** | : | |
| **2626 FRANKFORD LLC,** | : | Joint Administration Pending |
| **285 KINGSLAND LLC,** | : | |
| **231 E 123 LLC,** | : | |
| **193 HANCOCK LLC,** | : | |
| | : | |
| Debtors. | : | |

**DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b), 365
AUTHORIZING DEBTORS TO PAY CRITICAL VENDORS, OR IN THE
<u>ALTERNATIVE ASSUME EXECUTORY CONTRACTS</u>**

285 Kingsland LLC, 231 E 123 LLC and 193 Hancock LLC (collectively the "Debtors"), by and through their undersigned proposed counsel, hereby move this Court, pursuant to Sections 105, 363(b) and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code") for an order authorizing each of the Debtors to pay certain construction contractors as critical vendors, or in the alternative to assume the executory contracts with those contractors, (the "Motion"), and represent as follows:

**BACKGROUND**

1. On May 23, 2021 (the "Petition Date"), the Debtors, along with the other above captioned debtors in these jointly administered proceedings, each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

3. The Court granted joint administration of the Debtors' cases on June 23, 2021.

4821-1757-4904

4. Each Debtor that is the subject of this Motion is an entity that holds and/or manages a single piece of real estate located in the State of New York. The real estate is in various stages of completion.

5. The real properties owned by two (2) Debtors - 231 E 123 LLC (231 E. 123rd Street, New York, NY 10035) and 193 Hancock LLC (193 Hancock Street, Brooklyn, NY 11216) - are nearly complete, and are being prepared for tenant occupancy.

6. The real property owned by 285 Kingsland LLC is approximately 60% complete, and with some additional improvements will be cash flowing.

7. In order to develop the Debtors' real properties (the "Projects"), the Debtors required repair and construction work be performed.

8. The Debtors aver that complementing the projects will increase the value of the projects dollar for dollar or nearly so, and that completion is in the best interest of all stakeholders, including Sharestates.

9. Prepetition, the Debtors contracted with CTI Construction Inc. ("CTI") as general contractor for all the Projects. CTI did substantial work prepetition.

10. CTI subcontracted work to various subcontractors to install electrical systems, elevators, roofing, landscaping and other necessary parts of finalizing construction.

11. CTI and the subcontractors (the "Contractors") have not finished all necessary construction on any of the Projects.

12. The Contractors must sign off on permits for the work already performed, and their approval is also necessary to obtain certificates of occupancy for the Projects. Without appropriate action on permits and certificates of occupancy, the sale value of the Projects will be severely impaired.

13. Other contractors are unwilling to sign off on work they did not perform, such that the Debtors cannot easily and cheaply replace the Contractors if they are unwilling to complete work without payment for prepetition expenses.

14. The Contractors have actually refused to continue construction during the pendency of this case unless they are paid for their prepetition work.

15. CTI has a duty to complete construction pursuant to its contract with each Debtor, as well as associated estimates, work orders and invoices (the "Contracts").

16. The Debtors have duties under the Contracts to pay the amounts owed to CTI.

17. As of the date of this Motion, the amounts owed to CTI are $50,510.00 on account of 193 Hancock LLC, $176,553.17 on account of 231 E 123 LLC and $60,109.00 on behalf of 285 Kingsland LLC. A summary of the prepetition amounts and the underlying subcontractors, by Project, is attached as **Exhibit A**.

18. True and correct copies of the Contractors' estimates, invoices and change orders underlying the prepetition work are attached as **Exhibit B**.

19. The Debtors are seeking authorization for DIP lending (the "Loan") by a separate motion (the "DIP Motion"). The lender's affiliate will also act as the stalking horse bidder via the contemporaneous motion to approve bid procedures and sell the Projects.

20. Pursuant to the DIP Motion and the terms of the Loan, the lender and Debtors have developed budgets for the Projects (the "Approved Budgets"), true and correct copies of which are attached as **Exhibits C, D and E**.

21. The Debtors and the lender on the Loan believe the continued work of the Contractors is vital to maximizing the sale value of the Projects.

22. The lender has expressed interest in continuing to employ the Contractors to

complete work on 285 Kingsland to the extent it is not complete by the contemplated closing date. The Debtors do not wish to diminish a post-closing relationship that provides value to the lender-stalking horse.

23. If they cannot be paid as critical vendors, the Debtors seek to cure any default with the Contractors and provide adequate assurances, by paying the cure amounts owed to Contractors, from the proceeds of the DIP Loan.

24. The Approved Budgets allocate sufficient funds to cure pre-petition defaults owed to the Contractors and pay for all post-petition work as it comes due.

## JURISDICTION

25. This Court has jurisdiction over this Motion under 28 U.S.C. §1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief requested herein are 11 U.S.C. §§ 105, 362, 363, and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

26. The Debtors consent to the entry of a final order or judgment by the court if it is determined that the court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## BASIS FOR RELIEF

### A. Payment of Critical Vendors

27. Pursuant to section 363(b), the Court may authorize a debtor to use estate property "outside the ordinary course of business." In order to authorize such a payment, the decision a debtor's decision must be supported by sound business judgment.

28. Courts routinely couple this provision with section 105(a), which grants bankruptcy courts the authority to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title" to authorize payments of prepetition debts to 'critical vendors.' The use of section 105(a) is often called the 'doctrine of necessity.'

29. Critical vendor payments are appropriate under the 'doctrine of necessity.' "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 - a successful reorganization." In re Just for Feet, Inc., 242 B.R. 821, 825-26 (D. Del. 1999); See also In re Financial News Network, Inc. 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991); In re NVR L.P., 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (holding that "proponent of the payment must show substantial necessity"); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that payment must be "necessary to avert a serious threat to the chapter 11 process").

30. A prepetition creditor may be paid as a critical vendor when "(i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered." In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005) citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-77 (Bankr. S.D.N.Y. 1989).

31. All these elements for critical vendor status are met here. The payments are necessary because the Debtors' contemplated reorganization process depends upon marketing and selling the Projects. To obtain the highest and best prices, the 123rd and Hancock Projects must be complete by the contemplated closing date of November 30, 2021, while work on 285 Kingsland must be substantially further along that at present.

32.     A sound business justification exists in this case.  The Debtor's prepetition lender stopped funding in the middle of these projects.  Substantial moneys have been injected into the projects.  Those moneys would be squandered if the Debtor is unable to capitalize on its investments in the projects.

33.      Further the Debtor must be assured all work is in accordance with contractual expectations, and all applicable laws.  The Debtor avers that the Contractors are deeply familiar with the work already performed and the work to be performed.  They are the only persons knowledgeable about unique issues that arose or were anticipated to arise with regard to the Projects.  Further, other contractors will not guaranty work, or attest to the compliance with law for work that is concealed behind walls and/or completed by others, which is necessary to obtain certificates of occupancy.

34.     The Debtors simply cannot reliably expect a different set of contractors to be able to understand, fully, the existing work, adapt to the existing work and sign off on it for the purposes of complying with permits and obtaining certificates of occupancy.  The Debtors, based on their expertise in developing real property, believe that replacement contractors would refuse to sign off on permits for work performed by prior contractors.

35.     The Debtors do not merely need sign-offs from the Contractors: these same Contractors are necessary to complete the remaining work at 123rd and Hancock and the extensive work at the 285 Kingsland Project, as laid out in the Approved Budgets.

36.     The current stalking horse bidder for the Projects has expressed interesting in using the same Contractors for any work at the 285 Kingsland Project that is not completed by closing.  As such, there is a compelling business justification for making payments to these

critical vendors: the Debtors should not sour an ongoing relationship prior to a sale if they wish to maximize value at that sale.

37. This work must be completed to the highest quality and on schedule. The Contractors have, thus far, been unwilling to continue with construction while their prepetition amounts remain unpaid. The Contractors effectively have a veto over continuing construction and permit sign-offs.

38. The specifics of the work to be performed are embodied in estimates and invoices rather than a full formal set of construction contracts. As such, the Debtors submit that in the exercise of their business judgment they wish to pay the Contractors as critical vendors in preference to assuming piecemeal oral contracts which may be contested in some manner by the Contractors.

39. Additionally, many of the Contractors are small businesses that cannot survive substantial nonpayment for services rendered. If any Contractor is put out of business because of a delay in payment or the general economic dislocations caused by the present pandemic, it will be immensely difficult to obtain sign-offs for permits on the work performed by that Contractor.

40. In the exercise of their business judgment, the Debtors aver that the most effective way to ensure that ongoing construction is performed timely and on schedule is to seek authorization to pay the Contractors as critical vendors.

41. The payment to Contractors will not prejudice disfavored creditors. The Debtors' material creditors are secured creditors that will benefit from work performed by the Contractors, Contractors themselves and insider unsecured creditors that consent to the payment of the Contractors.

42. In fact, approximately $48,000.00 of the payments to be authorized under this Motion are secured by mechanic's liens that prime all existing mortgage liens. Payment of these amounts does not prejudice other creditors, it actively benefits them by removing superior encumbrances and arresting the accumulation of interest on those claims.

43. While the case law is not entirely settled, some courts have permitted contractors to file or otherwise perfect mechanic's liens postpetition under New York law. See, e.g., In re Severson Acres Development Corp., 142 B.R. 59, 60 (N.D.N.Y. 1992) ("The relation-back procedure set forth in § 15 of the lien law of the State of New York is recognized by § 546(b) of the Code. The reading together of these two sections makes it clear that the plaintiff may file its notice of lien subsequent to the chapter 11 filing."); In re Fiorillo & Co., 19 B.R. 21, 23 (SDNY 1982). The Contractors could potentially argue that they are allowed, under sections 362(b)(3) and 546(b), to file liens against the Projects in the amounts owed—in which case they would only be receiving, as critical vendors, what they would ultimately be entitled to get anyway. Payment of these contractors as critical vendors will provide certainty to present lien creditors.

44. The Debtors submit that they have demonstrated that the Contractors are critical vendors, and this Court should grant the Debtors authorization to pay prepetition amounts owed to these Contractors pursuant to the Approved Budgets.

**B. In the Alternative; Assumption of the Contracts**

45. Pursuant to 11 U.S.C. §365(d)(2), a trustee, and by extension a chapter 11 debtor-in-possession, "may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

46. Pursuant to 11 U.S.C. §365(b)(1), if a debtor-in-possession is in default under an executory contract, the debtor may not assume the contract unless the debtor "cures or provides adequate assurances that the [DIP] will promptly cure, such default," "compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and" "provides adequate assurance of future performance under such contract or lease."

47. Adequate assurance of future performance "is to be given a practical, pragmatic construction based upon ... the circumstances of [the] case". In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D.Fla. 1994) quoting In re Carlisle Homes, Inc., 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

48. To provide adequate assurances, a DIP must, in a practical sense, show that it can promptly cure any default, pay for damages caused by the default and continue in the contract without immediate subsequent default. In re Texas Health Enterprises, Inc., 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000).

49. While courts generally apply the "business judgment" standard to a decision to assume or reject, that business judgment must be reasonably exercised. Sharon Steel Corp. v. National Fuel Gas Distribution, 872 F.2d 36, 39-40 (3d Cir. 1989).

50. The Contracts between CTI and the Debtors are executory contracts because CTI and the Debtors each have ongoing duties which are material such that the breach of those duties would excuse performance by the other. See Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN.L.REV. 439, 442–44 (1973); In Re Exide Technologies, 607 F.3d 957, (3d. Cir. 2010) (applying Countryman test).

51. Specifically, CTI and the Contractors must complete unfinished work and sign off on permits once completed, and CTI must supervise the other Contractors to ensure compliance.

52. The Debtors have duties to make payments for work already performed and, once completed, for the finalizing construction.

53. In the exercise of their business judgment, the Debtors seek to assume the Contracts to prepare the properties for tenants and sale.

54. The Approved Budgets and DIP Loan specifically provide a cash infusion sufficient to cure any prepetition default and provide adequate assurances of future performance by paying for postpetition work as it is completed.

55. The full payment of amounts due is a sound exercise of the Debtors' business judgment in that it will *per se* provide a full cure and adequate assurance of performance, will ensure remaining construction is completed to the highest quality and on schedule.

56. If this Court does not grant the Debtors authorization to pay the Contractors as critical vendors, the Debtors seek alternative relief in the form of assumption of the Contracts.

WHEREFORE, the Debtors respectfully request this Honorable Court to enter an Order authorizing the Debtors to pay the Contractors as critical vendors or, in the alternative, assume the Contracts with CTI.

Respectfully submitted,

Dated: September 2, 2021

By: */s/ Edmond M. George*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Phone: (215) 665-3140
Proposed Counsel to the Debtors