DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC05D07D387D6

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | :    **Chapter 11** |
| | : |
| **1121 PIER VILLAGE LLC, et al.** | :    **Bankruptcy No. 21-11466 (ELF)** |
| | :    **(Jointly Administered)** |
| **Debtors.** | : |
| | : |

## DEBTORS' JOINT DISCLOSURE STATEMENT
## DATED SEPTEMBER 14, 2021

**TABLE OF CONTENTS.**

I.   INTRODUCTION ................................................................................................ 3

   A.   Purpose of This Document ................................................................... 3

   B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............... 3

     1.   Time and place of the hearing to approve this Disclosure Statement; ...................... 3

     2.   Deadline for voting to accept or reject the Plan; and .......................... 3

     3.   Deadline for objecting to the adequacy of this Disclosure Statement. ....................... 3

   C.   Disclaimer ................................................................. 4

II.   BACKGROUND ............................................................................................... 4

   A.   Description and History of the Debtors' Businesses ................................. 4

   B.   Insiders of the Debtor .......................................................... 5

   C.   Management of the Debtors During the Bankruptcy ................................. 5

   D.   Events Leading to Chapter 11 Filing ............................................. 5

   E.   Significant Events During the Bankruptcy Case .................................. 6

   G.   Claims Objections ............................................................. 7

   H.   Current and Historical Financial Conditions .................................... 8

III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT ................... 8

OF CLAIMS AND EQUITY INTERESTS ................................................................ 8

   A.   What Is the Purpose of the Plan of Reorganization? ............................. 8

   B.   Unclassified Claims .......................................................... 8

     1.   Administrative expenses, quarterly and Court fees .............................. 8

2.      Priority tax claims ................................................................................ 9

C.      Classes of Claims and Equity Interests ................................................... 9

1.      Classes of secured claims ........................................................................ 9

2.      Classes of priority unsecured claims ..................................................... 15

3.      Classes of general unsecured claims ..................................................... 15

4.      Classes of equity interest holders .......................................................... 16

D.      Means of Implementing the Plan ........................................................... 16

1.      Source of payments ............................................................................... 16

2.      Post-confirmation Management ............................................................. 17

E.      Risk Factors .......................................................................................... 17

F.      Executory Contracts and Unexpired Leases ........................................... 17

G.      Tax Consequences of Plan ..................................................................... 18

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES .......................................... 18

A.      Who May Vote or Object ....................................................................... 18

1.      What is an allowed claim or an allowed equity interest? ......................... 19

2.      What is an impaired claim or impaired equity interest? .......................... 19

3.      Who is not entitled to vote ..................................................................... 19

4.      Who can vote in more than one class ...................................................... 20

B.      Votes Necessary to Confirm the Plan ..................................................... 20

1.      Votes necessary for a class to accept the plan ........................................ 20

2.      Treatment of non-accepting classes of secured claims, general unsecured claims, and interests ............................................................................................. 20

C.      Liquidation Analysis ............................................................................. 20

D.      Feasibility ............................................................................................. 21

1.      Ability to initially fund plan .................................................................. 21

2.      Ability to make future plan payments and operate without further reorganization . 21

3.      Illustrative Description of Reorganization .............................................. 21

V.  EFFECT OF CONFIRMATION OF PLAN ................................................................. 22

A.      Discharge of Debtor and Enforcing Injunction ....................................... 22

B.      Modification of Plan .............................................................................. 23

C.      Waiver of Stay of Confirmation Order and Immediate Effect ................. 23

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC0507D397D6

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the jointly-administered chapter 11 bankruptcy cases of 1121 Pier Village LLC, Penn Treaty Homes LLC, 2626 Frankford LLC, 285 Kingsland LLC, 231 E 123 LLC and 193 Hancock LLC (the "Debtors"). This Disclosure Statement provides information about the Debtors and the Plan filed on September 14, 2021, as amended (the "Plan") to help you decide how to vote.  A copy of the Plan is attached as **Exhibit A**. **Your rights may be affected**. **You should read the Plan and this Disclosure Statement carefully. You may wish to consult an attorney about your rights and your treatment under the Plan.**

The proposed distributions under the Plan are discussed Section III of this Disclosure Statement.  General unsecured creditors are classified in Classes 10 through 15, and as described in greater detail herein, are eligible to receive a *pro rata* percentage of their allowed claims, to be distributed pursuant to this Plan.

### A.    Purpose of This Document

This Disclosure Statement describes: (a) the Debtors and significant events during the bankruptcy cases; (b) how the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed); (c) who can vote on or object to the Plan; (d) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; (e) why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and (f) the effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  A separate order has been entered setting the following information:

1.  Time and place of the hearing to approve this Disclosure Statement;

2.  Deadline for voting to accept or reject the Plan; and

3.  Deadline for objecting to the adequacy of this Disclosure Statement.

If you want additional information about the Plan or the voting procedure, you should contact Edmond M. George, Esquire, Obermayer Rebmann Maxwell & Hippel LLP, Centre Square West, 1500 Market Street, Suite 3400, Philadelphia, PA  19102, (215) 665-3140, edmond.george@obermayer.com.

### C.    Disclaimer

The Court will consider whether this Disclosure Statement may be approved as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

## II.    BACKGROUND

### A.    Description and History of the Debtors' Businesses

Since 2015, a number of affiliated businesses owned or controlled by Alex Halimi and Saul Mazor have been in the business of purchasing and developing residential real estate for sale or lease.  The Debtors are each members of this affiliate group; some members of the affiliate group have not filed bankruptcy.

This affiliate group utilized Sharestates Intercap Line LLC, Sharestates Investments LLC and other affiliated entities (collectively "Sharestates")[1] as their primary construction lender for all acquisitions and development projects.

Debtor 1121 Pier Village LLC purchased 1121-31 N Delaware Avenue, Philadelphia, PA 19125 from Stewart.  This property is currently zoned for a 35-unit multi-family structure, a 53 unit multi-family structure and 27 townhomes, for a total of 115 units, each with an as-sold price in excess of $1,300,000.00.  This property is raw land without any vertical construction.

Debtor Penn Treaty Homes LLC purchased the adjacent property at 1143-51 N Delaware Avenue, Philadelphia, PA 19125.  This Debtor planned to build 19 high-end units for sale, with an as-sold price in excess of $1,500,000.00 each.  This Debtor obtained a bulkhead lease for 198 years from the Commonwealth of Pennsylvania in order to maximize the number of units that could be constructed.  Construction on this property was begun, and a non-watertight shell was constructed before the cessation of loan disbursements.  No work has occurred on this structure in over a year.

Debtor 2626 Frankford LLC purchased 2626 Frankford Avenue, Philadelphia PA 19125. This property is zoned for mixed-use commercial and residential development.  This property is ready for vertical construction.

Debtor 193 Hancock LLC purchased 193 Hancock Street, Brooklyn, NY 11216.  This property is a multi-unit residential rental.  Construction on this property was approximately 80% complete prior to the cessation of loan disbursements.

---

[1]      All capitalized defined terms in this Disclosure Statement have the meaning ascribed to them in the Plan. See Ex. A.

DocuSign Envelope ID: 26DBE59C-6A87-48E7-BD3C-AC0507D38706

Debtor 231 E 123 LLC purchased 231 E 123rd Street, New York, NY 10035. This property is a multi-unit residential rental. Construction on this property was approximately 80% complete prior to the cessation of loan disbursements.

Debtor 285 Kingsland LLC purchased 285 Kingsland Avenue, Brooklyn, NY 11222. This property is a multi-unit residential rental. Construction on this property was approximately 60% complete prior to the cessation of loan disbursements.

### B.    Insiders of the Debtor

The insiders of the Debtors include the member-managers of each Debtor: Urban Legend LLC and Gotham Bedrock LLC for Debtor Penn Treaty Homes LLC and Urban Legend LLC and Gotham Deeds LLC for all other Debtors. Additional insiders include Alex Halimi (owner and manager of Gotham Deeds LLC and Gotham Bedrock LLC) and Saul Mazor (owner and manager of Urban Legend LLC). Other non-Debtor members of the Debtors' affiliate group, owned and controlled by entities owned and managed by Alex Halimi and Saul Mazor are also insiders.

### C.    Management of the Debtors During the Bankruptcy

The Debtors have managed their own assets as debtors-in-possession during these Chapter 11 proceeding on the same terms utilized prior to bankruptcy. The Debtors will continue to act in the same capacity post-confirmation.

### D.    Events Leading to Chapter 11 Filing

The Debtors acquired the real properties described above (the "Projects") between 2015 and 2018. For each Project, the Debtors obtained an open-end construction mortgage from Sharestates to fund the construction or conversion of each property to prepare it for sale or rental.

Each loan to each Debtor was cross-defaulted, meaning that a default on any loan would allow Sharestates to place any other loan into default. The loans did not explicitly spell out the process by which disbursements would be requested or made.

The Debtors began construction and conversion on the Projects. However, there were immediate issues with the process by which the Debtors could request disbursements from Sharestates.

The factual background relating to the Debtors' issues with Sharestates is set forth in detail in the May 27, 2021 complaint commencing 1121 Pier Village LLC et al. v. Sharestates Intercap Line LLC et al., Adversary No. 21-44-elf (the "Complaint"), attached as **Exhibit B**.

In short, Sharestates began to alter the draw process and refuse to disburse loan proceeds to certain Debtors unless they received more favorable treatment as to other Debtors than allowed by the existing loans. As described more extensively in the Complaint, Sharestates, over the course of their lender-borrower relationship, committed acts of lender liability, including,

upon information and belief, fraudulently representing that funds would be available timely for construction draws when Sharestates did not have those funds available, unilaterally changing the contractual draw process in breach of its duties and threatening to foreclose on Debtors that were not in default of contractual payments in order to extract concessions on larger Debtors.

The misconduct described in the Complaint meant that the Debtors could not pay contractors for work performed. When they were not paid, the contractors stopped working on the various Debtor Projects. The cessation of disbursements caused the failure of all Debtors' development Projects and necessitated the instant bankruptcy filings.

### E.    Significant Events During the Bankruptcy Case

On May 23, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and remain in possession of their property and are operating their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these Chapter 11 cases and no Trustee or examiner has been sought or appointed.

On May 26, 2021, the Debtors filed an application to employ Obermayer Rebmann Maxwell & Hippel LLP as counsel. The United States Trustee and Sharestates have objected to this application, which is presently pending before the Court.

On May 27, 2021, the Debtors filed the Complaint, commencing the Suit against Sharestates and associated parties Atlantis National Services, Inc., Raymond Davoodi, Radni Davoodi and Allen Shayanfekr. The Suit seeks affirmative recovery for breaches of the lending contracts with the Debtors, equitable subrogation of Sharestates's claims for the misconduct that forced the Debtors into bankruptcy and other forms of relief.

On July 2, 2021, the Court granted a motion to jointly administer the bankruptcy cases of the Debtors, with 1121 Pier Village LLC's case as the lead case.

On July 9, 2021, the Court granted the Debtors' motion to set a bar date for the filing of claims. The last day to file claims was August 18, 2021 for non-governmental creditors and November 19, 2021 for governmental creditors.

The Debtors evaluated their reorganizational options and elected to obtain post-petition financing in order to finish construction on the Projects owned by the New York Debtors and do demolition on the depreciating shell of the Penn Treaty Homes LLC Project. With these value-improving efforts in place, the Debtors elected to market and sell their assets after a nationwide marketing effort in order to maximize the value available for parties in interest.

At an August 20, 2021 hearing, the Court ordered that the automatic stay would remain in place pending a further hearing, and ordered the Debtors to file the motions necessary to obtain financing, market and sell the New York Projects by August 27, 2021. The Court similarly ordered the Debtors to file the necessary motions to obtain financing, market and sell the Philadelphia Projects by September 1, 2021.

These motions, and other motions necessary to effectuate the post-petition lending and sale process, were filed as ordered and are currently pending before this Court. The Court has scheduled a hearing for September 27, 2021 on the following motions:

- **Debtors' Motion to Approve New York Bid Procedures**: Seeking approval of the marketing and sale process, and initial stalking horse bid, for the assets of 193 Hancock LLC, 231 E 123 LLC and 285 Kingsland LLC.

- **Debtors' Motion to Approve New York DIP Lending**: Seeking post-petition lending in the amount of $2.5 million to complete or continue construction on 193 Hancock LLC, 231 E 123 LLC and 285 Kingsland LLC and pay other expenses including certain costs of marketing and sale.

- **Debtors' Motion to Pay New York Critical Vendors**: Seeking authorization to pay, from the New York DIP loan, the prepetition claims of certain contractors necessary to complete work on the New York Projects.

- **Debtors' Motion to Limit the Credit Bid of Sharestates and Stewart**: Seeking to limit or eliminate the right of Sharestates and Stewart to credit bid pursuant to 11 U.S.C. §363(k) at any sale of assets encumbered by their liens.

- **Debtors' Motion to Approve Bid Procedures for Assets of 1121 Pier Village LLC and Penn Treaty Homes LLC**: Seeking approval of the marketing and sale process, and initial stalking horse bid of $12 million, for the assets of 1121 Pier Village LLC and Penn Treaty Homes LLC.

- **Debtors' Motion to Approve Bid Procedures for Assets of 2626 Frankford LLC**: Seeking approval of the marketing and sale process, and initial stalking horse bid of $400,000.00, for the assets of 2626 Frankford LLC.

- **Debtors' Motion to Approve Philadelphia DIP Lending**: Seeking post-petition lending in the amount of $800,000.00 to complete demolition on Penn Treaty Homes LLC and pay other expenses including certain costs of marketing and sale for 1121 Pier Village LLC and Penn Treaty Homes LLC and 2626 Frankford LLC.

Conditioned on the Court granting these motions, the Debtors propose a Plan that pays all administrative expense and undisputed secured creditors on the Effective Date. The remaining funds will be held in escrow and will be disbursed upon resolution of the Suit, which will determine the validity and amount of the disputed secured claims of Sharestates. If there are excess proceeds – either from the sales or the Suit - the excess will be paid to unsecured creditors.

### G.      Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims and shall file objections on or before sixty (60) days from the Effective Date of the Plan.

### H.    Current and Historical Financial Conditions

As described above, the Debtors' operations were funded by loan disbursements. When those disbursements ceased, Debtor operations ceased. The Debtors have not operated for a number of months prepetition, and have no material financial disbursements to report.

Debtors 193 Hancock LLC and 231 E 123 LLC have begun renting available units to tenants. These Debtors are holding the rents, increasing their cash on hand. The most recent post-petition operating report filed since the commencement of these Debtor's bankruptcy cases are set forth in **Exhibits C and D**.

The market value of the Debtors' assets is highly uncertain given the substantial development on some parcels since they were purchased, the weathering and depreciation on others and the major market structure changes precipitated by low interest rates and the recent pandemic. The Debtors seek to market-test the value of their assets by marketing them for auction and sale by motions pending before this Court.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What Is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Therefore, the Plan Proponent has not placed the following claims in any class:

1.    Administrative expenses, quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtors' chapter 11 case which are allowed under §503(b) of the Code. Administrative expenses include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under §330(a) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The Code also requires that fees owed under 28 U.S.C. §1930, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

DocuSign Envelope ID: 26DBEE9C-5A87-48E7-BD3C-AC0E07D397D6

The following chart lists the Debtors' estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date. | None. | Any ordinary course administrative expenses not paid according to DIP financing orders shall be paid in full on the effective date. |
| Professional Fees, as approved by the Court. | Counsel fees and expenses of the Debtor's counsel as of September 1, 2021 are approximately $200,000.00. Debtor's counsel and accountants for the Debtor have agreed to receive the full amount of this administrative claim over time as Plan funding becomes available. | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan. |
| Office of the U.S. Trustee Fees | $0.00 | Paid quarterly with any outstanding balance paid in full on the effective date of the Plan. |
| Total: | Approximately $200,000.00 | |

2.  Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. §511, in regular installments paid over a period not exceeding 5 years from the order of relief.

There are no §507(a)(8) priority tax claims.

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.  Classes of secured claims

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estates (or that are subject to setoff) to the extent allowed as secured claims under §506 of the

DocuSign Envelope ID: 26DBEE9C-5A87-48E7-BD3C-AC0F07D39706

Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following charts list all of the Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1**<br>**Secured Claims of Debtor-in-Possession Lenders** | Unimpaired | Class 1 claims are the Secured Claims of the debtor-in-possession lenders, which are secured by priming liens on all assets of the applicable Debtors.<br><br>If not already paid in full on the Effective Date, Class 1 claims shall be paid in full upon the sale of the assets securing such claims, pursuant to the terms of the underlying loans. |
| **Class 2**<br>**Secured Claims of Priming Lien Creditors** | Unimpaired | Class 2 claims are the Secured Claims of the Priming Lien Creditors, which are secured by liens on the real property of the applicable Debtors.<br><br>If not already paid in full on the Effective Date, Class 2 claims shall be paid in full, with applicable interest, upon the sale of the real property securing such claims. |
| **Class 3**<br>**Sharestates Secured Claim against 1121 Pier Village LLC** | Impaired | Class 3 is the Allowed Secured Claim of Sharestates against 1121 Pier Village LLC.  The treatment to be provided to Class 3 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim.  The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection.<br><br>This class is impaired under the Plan.  Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 3 claim shall attach to the proceeds.  The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that |

| | | Class 3 claims are Allowed Secured Claims and are not equitably subordinated. To the extent this class is subordinated, this class shall receive no distribution under this Plan. |
|---|---|---|
| | | The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. §1111(b). |
| **Class 4** **Stewart Secured Claim against 1121 Pier Village LLC** | Impaired | Class 4 is the Allowed Secured Claim of Stewart against 1121 Pier Village LLC. The treatment to be provided to Class 4 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim. |
| | | This class is impaired under the Plan. Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 4 claim shall attach to the proceeds. The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon allocation of the Net Sale Price between Stewart and Sharestates, the Debtor shall pay the allocated portion of the Net Sale Price, plus escrowed present value interest, to Stewart. |
| | | The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. §1111(b). |
| **Class 5** **Sharestates Secured Claim against Penn Treaty Homes LLC** | Impaired | Class 5 is the Allowed Secured Claim of Sharestates against Penn Treaty Homes LLC. The treatment to be provided to Class 5 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim. The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection. |
| | | This class is impaired under the Plan. Upon any sale of any assets securing the claim pursuant to this Plan or a motion |

|  |  |  |
|---|---|---|
|  |  | under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 5 claim shall attach to the proceeds. The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that Class 5 claims are Allowed Secured Claims and are not equitably subordinated.  To the extent this class is subordinated, this class shall receive no distribution under this Plan. |
|  |  | The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. §1111(b). |
| Class 6 **Sharestates Secured Claim against 2626 Frankford LLC** | Impaired | Class 6 is the Allowed Secured Claim of Sharestates against 2626 Frankford LLC.  The treatment to be provided to Class 6 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim.  The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection. |
|  |  | This class is impaired under the Plan.  Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 6 claim shall attach to the proceeds.  The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that Class 6 claims are Allowed Secured Claims and are not equitably subordinated.  To the extent this class is subordinated, this class shall receive no distribution under this Plan. |
|  |  | The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. |

| | | This class may not elect treatment under 11 U.S.C. §1111(b). |
|---|---|---|
| **Class 7**<br>**Sharestates**<br>**Secured Claim**<br>**against 193**<br>**Hancock LLC** | Impaired | Class 7 is the Allowed Secured Claim of Sharestates against 193 Hancock LLC. The treatment to be provided to Class 7 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim. The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection.<br><br>This class is impaired under the Plan. Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 7 claim shall attach to the proceeds. The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that Class 7 claims are Allowed Secured Claims and are not equitably subordinated. To the extent this class is subordinated, this class shall receive no distribution under this Plan.<br><br>The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. §1111(b). |
| **Class 8**<br>**Sharestates**<br>**Secured Claim**<br>**against 231 E**<br>**123 LLC** | Impaired | Class 8 is the Allowed Secured Claim of Sharestates against 231 E 123 LLC. The treatment to be provided to Class 8 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim. The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection.<br><br>This class is impaired under the Plan. Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net |

proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 8 claim shall attach to the proceeds. The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that Class 8 claims are Allowed Secured Claims and are not equitably subordinated.    To the extent this class is subordinated, this class shall receive no distribution under this Plan.

The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. §1111(b).

| | | |
|---|---|---|
| **Class 9**<br>**Sharestates**<br>**Secured Claim**<br>**against 285**<br>**Kingsland LLC** | Impaired | Class 9 is the Allowed Secured Claim of Sharestates against 285 Kingsland LLC. The treatment to be provided to Class 9 shall be in full and final satisfaction of the Loan Documents underlying the Secured Claim. The Debtor has objected to the extent and validity of this claim in the Suit, seeking, among other things equitable subordination as well as affirmative recovery under state law causes of action. The Debtor intends to object to this claim pursuant to 11 U.S.C. §502(b), either in the Suit or by separate claims objection.<br><br>This class is impaired under the Plan. Upon any sale of any assets securing the claim pursuant to this Plan or a motion under 11 U.S.C. §363, the Debtor shall retain the net proceeds of the sale, and all liens, claims and encumbrances related to any allowed Class 9 claim shall attach to the proceeds. The Debtor shall also retain in escrow payments representing 3.5% of the Net Sale Price of the assets representing present value interest upon the Secured Claim. Upon resolution of the Suit by settlement or Final Order, the Debtor shall distribute escrowed proceeds to the extent that Class 9 claims are Allowed Secured Claims and are not equitably subordinated.    To the extent this class is subordinated, this class shall receive no distribution under this Plan.<br><br>The assets securing the claims will be sold pursuant to this pursuant to this Plan or a motion under 11 U.S.C. §363. This class may not elect treatment under 11 U.S.C. |

§1111(b).

---

2. Classes of priority unsecured claims

The Code requires that, with respect to a class of claims of a kind referred to in 11 U.S.C. §§ 507(a)(1), (4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.

There are no claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Code.

3. Classes of general unsecured claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of general unsecured claims against the Debtors:

### A.     General Unsecured Creditors:

| | | |
|---|---|---|
| Class 10 **1121 Pier Village LLC General Unsecured Claims** | Impaired | Class 10 is all non-priority unsecured claims against 1121 Pier Village LLC allowed under §502 of the Code.<br><br>Class 10 is impaired by this Plan. Upon resolution of the Suit, Class 10 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |
| Class 11 **Penn Treaty Homes LLC General Unsecured Claims** | Impaired | Class 11 is all non-priority unsecured claims against Penn Treaty Homes LLC allowed under §502 of the Code.<br><br>Class 11 is impaired by this Plan. Upon resolution of the Suit, Class 11 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |
| Class 12 **2626 Frankford LLC General Unsecured Claims** | Impaired | Class 12 is all non-priority unsecured claims against 2626 Frankford LLC allowed under §502 of the Code.<br><br>Class 12 is impaired by this Plan. Upon resolution of the Suit, Class 12 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |
| Class 13 **193 Hancock LLC General Unsecured Claims** | Impaired | Class 13 is all non-priority unsecured claims against 193 Hancock LLC allowed under §502 of the Code.<br><br>Class 13 is impaired by this Plan. Upon resolution of the Suit, Class 13 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC0507D397D6

| Class 14<br>**231 E 123 LLC General Unsecured Claims** | Impaired | Class 14 is all non-priority unsecured claims against 231 E 123 LLC allowed under §502 of the Code.<br><br>Class 14 is impaired by this Plan. Upon resolution of the Suit, Class 14 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |
|---|---|---|
| Class 15<br>**285 Kingsland LLC General Unsecured Claims** | Impaired | Class 15 is all non-priority unsecured claims against 285 Kingsland LLC allowed under §502 of the Code.<br><br>Class 15 is impaired by this Plan. Upon resolution of the Suit, Class 15 claims shall receive their pro rata share of the Allocated Value attributed to this Debtor. |
| Class 16<br>**Insider Unsecured Claims** | Impaired | Class 16 is all non-priority unsecured claims by insiders. Claims is this class shall be discharged without payment. |

4. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of equity interest holders:

| Class 17<br>**Equity** | Unimpaired | Class 17 is unimpaired by this Plan. All equity holders of the Debtors shall retain their equity post-confirmation. |
|---|---|---|

**D.      Means of Implementing the Plan**

1. Source of payments

Payments and distributions under the Plan will be funded by one or any of the following:

1.    **Sales:** By separate motions pending before the Court, the Debtors seek authorization to market and sell substantially all of their assets, in the exercise of their business judgment, free and clear of all liens and interests pursuant to 11 U.S.C. §363(b), (f). After payment of closing costs and all Class 1 and 2 claims pursuant to this Plan, the Debtors shall escrow an amount consistent with the treatment of applicable Class 3 through 9 Claims pending resolution of the Suit and the end of the 60-day objection period pursuant to Section 5.05 of this Plan. Any excess proceeds of any sale shall be paid to unclassified claims pursuant to Article III of this Plan, and then to Classes 10 through 15, as applicable, pursuant to Article IV of this Plan. Any such sale necessary to fund this Plan shall be made pursuant to this Plan and exempt from transfer or stamp taxes pursuant to 11 U.S.C. §1146.

DocuSign Envelope ID: 26DBEE9C-5A87-48E7-BD3C-AC0507D397D6

2.      **DIP Loan Proceeds:** By separate motions pending before the Court, the Debtors seek authorization to obtain post-petition financing pursuant to 11 U.S.C. §364(c), (d).  The budgets associated with these loans specifically provide amounts to pay U.S. Trustee fees and other professional fees upon approval by the Court.

3.      **Litigation:** Net recoveries from the Suit after payment of counsel fees and costs incurred in the Suit shall be paid pursuant to this Plan.

4.      **Collections:** Net recoveries from the any collections on account of prepetition accounts receivable, after payment of counsel fees and costs incurred, shall be paid pursuant to this Plan.

Alex Halimi shall serve as Disbursing Agent for the Debtors, and shall make disbursements of funds from the above sources to the Classes entitled to receive them pursuant to this Plan.  The Disbursing Agent shall not be paid for his efforts as Disbursing Agent and no bond is required.

2.  Post-confirmation Management

The Post-Confirmation Management of the Debtors will remain with current management, mainly Gotham Deeds LLC, Gotham Bedrock LLC, Urban Legend LLC and their managers Alex Halimi and Saul Mazor.

**E.      Risk Factors**

The proposed Plan has the following risks:
Risks inherent in any attempt to sell development real estate, including the inability to find buyers for appropriate prices and the inability of those buyers to close an agreed-upon sale.
Risks inherent in the business of renting residential real estate, including inability to find tenants for vacant or to-be-vacated properties, inability to collect rents from existing tenants and inability to evict tenants for non-payment under the current eviction moratoriums.  The Debtors expect current eviction moratoriums to end or be substantially modified by the end of 2021, reducing this particular risk.

**F.      Executory Contracts and Unexpired Leases**

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtors will assume, and if applicable assign, under the Plan. Assumption means that a Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 provides that the Debtors will file a list of all such executory contracts and leases prior to the confirmation hearing.  This list will enumerate how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.  The Debtors do not intend to reject any unexpired leases for which the tenant has made a security deposit, so no tenants will have claims entitled to priority pursuant to 11 U.S.C. §507(a)(7).

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC0507D89706

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.  All executory contracts and unexpired leases that are not listed in Article 6 or the filed list or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

The deadline for filing a Proof of Claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after entry of an order authorizing the rejection of the lease or contract.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.      Tax Consequences of Plan

**Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

The Debtors are not aware of any tax consequences as a result of confirmation of the Plan.  Nevertheless, there may be tax consequences to the Debtors and creditors as a result of any discharge, or in connection with the receipt of plan consideration after confirmation.

## IV.      CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that: (1) the Plan must be proposed in good faith; (2) if a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders; (3) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (4) the Plan must be feasible.  These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

### A.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that <u>Classes 3 through 15 are impaired.</u> Holders of allowed claims in those classes are therefore entitled to vote to accept or reject the Plan. The Plan

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC0F07D387D6

Proponent believes <u>Class 16</u> is entirely impaired and is deemed to reject the Plan.  The Plan Proponent believes that <u>Classes 1, 2 and 17 are unimpaired</u>, are thus deemed to accept the Plan and is not entitled to vote.

1. What is an allowed claim or an allowed equity interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either: (1) the Debtor has scheduled the claim on that Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for the filing a proof of claim, other than by a governmental unit, in this case was August 18, 2021.***

2. What is an impaired claim or impaired equity interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. Who is not entitled to vote

The holders of the following five types of claims and equity interests are not entitled to vote:

i. holders of claims and equity interests that have been disallowed by an order of the Court;

ii. holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

iii. holders of claims or equity interests in unimpaired classes;

iv. holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

v. holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

vi. administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.**

4.   Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless: (1) all impaired classes have voted to accept the Plan; or (2) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2.

1.   Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur: (1) the  holders  of  more than one half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

2.   Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a cram down confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### C.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation on the Effective Date.

The Plan treats all creditors at least as well as they would be treated in a chapter 7 liquidation on the effective date.  If the Debtors were liquidated on the effective date, the administrative claims of Debtors' counsel and accountants would be paid in full first, for over $200,000.00.  After that, the chapter 7 trustee performing this liquidation would be paid its own fees as an administrative claim.

DocuSign Envelope ID: 26DBEE9C-5A87-48E7-BD3C-AC0507D89706

Only after that would secured claims be entitled to payment.  The nationwide marketing and auction process contemplated in the Debtors' motions to approve bid procedures will expose the Debtors' material real estate-associate assets to the most extensive market test of their value. This will ensure the Debtors' assets are sold for the highest price the market will bear.  This sale process will generate a higher sale price that a quick liquidation sale in a chapter 7, ensuring secured creditors are treated better than in an effective-date liquidation.

In the event that the Suit generates net proceeds for payment to unsecured creditors, those unsecured creditors will receive their pro rata share of the Allocated Value of those proceeds.  A chapter 7 trustee would be unable to pursue the Suit in a more cost-effective manner than that contemplated by the Debtors, as Debtors' counsel already has extensive knowledge of the facts and circumstances behind the Suit.  In a liquidation, trustee's counsel would need to be brought up to speed, then undertake exactly the same litigation process as Debtors' counsel.  In the end, unsecured creditors would likely receive nothing in a liquidation.

> **D.        Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

> 1.  Ability to initially fund plan

The DIP lending budgets specifically allocate funds to pay in full to pay all the claims and expenses that are entitled to be paid on effective date of the Plan. These funds are entirely sufficient to pay all fees and administrative claims entitled to payment on the Effective Date.

> 2.  Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

Following the closing on the contemplated sales, the Debtors will have no material ongoing operating expenses aside from counsel fees incurred in pursuing the Suit.

The Debtors' remaining obligations under this Plan arise only upon the resolution of the Suit.  The outcome of the Suit determines whether the Debtors will generate net proceeds beyond the secured claims of Sharestates.  In the event that such net proceeds are recovered, they will be paid immediately to unsecured creditors.  The Debtors have the ability to make all future payments contemplated by the Plan.

> 3.  Illustrative Description of Reorganization

In order to allay any concerns that Plan performance is not feasible, the Debtors provide the following description for illustrative purposes only.

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC9F07D89706

The Debtors are seeking to sell their assets and pursue the Suit to reduce or offset the secured claim of Sharestates and generate net proceeds for unsecured creditors. The DIP lending budgets allocate approximately $800,000.00 for administrative expenses, allowing the Debtors to fully pursue the Suit without practical risk that they may be required to pay Suit proceeds towards administrative claims.

Each Debtor's ability to pay is determined according to its Allocated Value – the net realized proceeds of a sale plus the net realized proceeds from the Suit attributable to that Debtor. Using Debtor 193 Hancock as an example, if the Allocated Value for this Debtor exceeds the secured claim – as allowed – filed by Sharestates, then the excess Allocated Value will be paid to unsecured creditors upon resolution of the Suit. If the Allocated Value of this Debtor does not exceed the allowed secured claim, that Allocated Value will be paid to Sharestates and nothing will be paid to unsecured creditors. As this illustration shows, unsecured creditors will be paid if, in combination, the sales generate sufficient proceeds, the Debtors sufficiently reduce the amounts of the filed secured claims and the Debtors recover sufficient funds via the Suit. Unsecured creditors are substantially more likely to be paid if the Plan is confirmed than if the Debtors were liquidated in chapter 7. Unsecured creditors would receive nothing in a chapter 7 liquidation, and cannot receive worse treatment if the Plan is confirmed.

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     Discharge of Debtor and Enforcing Injunction

This Plan provides that upon confirmation of the Plan, the Debtors shall be discharged of liability for payment of debts incurred before Confirmation, pursuant 11 U.S.C. §1141. However, any liability imposed by the Plan will <u>not</u> be discharged. If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtors or their estates or any other persons, or to prejudice in any manner the rights of the Debtors or their estates or any person in any further proceeding involving the Debtors or their estates. The provisions of the Plan shall be binding upon Debtors, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

**The discharge of debts and the releases by the Debtors are enforced by an injunction such that, except as provided in the Plan or the Confirmation Order, as of the Effective Date, all persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or the**

DocuSign Envelope ID: 26DBE59C-5A87-48E7-BD3C-AC0507D387D6

**Reorganized Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any person that does not comply with or is inconsistent with the provisions of the Plan.**

### B.    Modification of Plan

The Plan Proponents may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtors, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to: (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.    Waiver of Stay of Confirmation Order and Immediate Effect

The performance of the Plan depends upon the prompt consummation of sales and transfers of real estate. This constitutes cause to waive the 14-day stay of a confirmation order pursuant to Fed. R. Bankr. P. 3020(e). The waiver of this stay will permit the Debtors to complete the transactions necessary to perform the Plan as expeditiously as possible.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

DocuSign Envelope ID: 26DBEE9C-5A87-48E7-BD3C-AC0E07D297D6

Dated:

Alex Halimi, Managing Member of Gotham
Deeds LLC and Gotham Bedrock LLC,
Managers of The Debtors, Plan Proponents

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

Dated: September 14, 2021          By:          */s/ Edmond M. George*
                                               Michael D. Vagnoni, Esquire
                                               Edmond M. George, Esquire
                                               Centre Square West
                                               1500 Market Street, Suite 3400
                                               Philadelphia, PA  19102
                                               Telephone: 215.665.3140
                                               Facsimile: 215.665.3165
                                               Edmond.george@obermayer.com
                                               *Proposed Counsel for the Debtors*

4843-2108-7735