IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| 1121 Pier Village LLC., *et al.*[1] | Case No. 21-11466 (ELF) |
| Debtors. | (Jointly Administered) |

### DEBTORS' MEMORANDUM OF LAW

Debtors, 1121 Pier Village LLC, Penn Treaty Homes LLC, 2626 Frankford LLC, 285 Kingsland LLC, 231 E 123 LLC and 193 Hancock LLC (collectively the "Debtors"), by and through their counsel, hereby file this Memorandum of Law addressing issues raised by the Court at the November 4, 2021 hearing on the Debtor's Motion to Limit Credit Bid Pursuant to 11 U.S.C. §363(k) ("Credit Bid Motion") [Dkt. 104], and pursuant to this Court's Order of November 5, 2021 [Dkt. 257].

**I.    INTRODUCTION**

On November 4, 2021, the Court held a hearing on the Debtor's Motion to Limit Credit Bid Pursuant to 11 U.S.C §363(k) ("Credit Bid Motion"). During the hearing, the Court raised certain legal issues that would need to be decided before the Debtors could continue their evidentiary record on the Credit Bid Motion. The Court entered an order directing that the Debtors file a memorandum of law addressing two (2) potentially dispositive legal issues.

---

[1] 2626 Frankford LLC (21-11467-ELF), 193 Hancock LLC (21-11468-ELF), 231 E 123 LLC (21-11469-ELF), 285 Kingsland LLC (21-11470-ELF), and Penn Treaty Homes LLC (21-11471-ELF).

## II. QUESTIONS PRESENTED

**Question:** Are the lender releases in the modification and forbearance agreements avoidable or otherwise unenforceable against the Debtors?

**Suggested Answer: YES.**

**Question:** Is the claim under 11 U.S.C. § 544 in Count I of the Complaint, alleging that Sharestates' mortgages on the property of 1121 Pier Village LLC are avoidable supported by law?

**Suggested Answer: YES.**

## III. PROCEDURAL HISTORY AND BACKGROUND

On May 23, 2021 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), which cases are jointly administered. No request has been made for the appointment of a trustee or examiner in the Debtors' chapter 11 cases. The United States Trustee has not appointed an Official Committee of Unsecured Creditors in any of the Debtors' bankruptcy proceedings.

On May 27, 2021, the Debtors filed a complaint commencing *1121 Pier Village LLC, et al., v. Sharestates Intercap Line LLC et al.*, Adversary No. 21-44-elf. This Court granted the Debtors' motion to amend the complaint on November 2, 2021, designating the proposed first amended complaint (the "Complaint") as the operative complaint. [Adv. Dkt. 27].[2]

---

[2] The Debtors incorporate the Complaint as if set forth at length. All capitalized defined terms shall have the same meaning as in the Complaint.

IV. **ARGUMENT**

    A. **The lender releases are avoidable and otherwise unenforceable against the Debtors.**

In connection with certain loans made by Sharestates to 1121 Pier Village LLC ("Pier Debtor"), these two parties executed a Confirmation, Modification and Ratification to Loan Documents as of August 20, 2020 ("Modification Agreement"). These two parties agreed, *inter alia*, to make certain modifications to the Loan Agreements and Loan Documents. The modifications substantially changed the terms of the construction loans, how Sharestates funded the construction loans, and how those payments were to be made and applied. The Modification Agreement also contained what is purported to be a "Release of Lender". *See* Section 5, Exhibit B to Complaint. In addition, the provision specifically states that the "release provision is not intended to release the Lender from any obligations or claims relating to [the] Modification or for any claims after execution of [the] Modification." See Exhibit B to Complaint.

Around that same time, Sharestates and Penn Treaty Homes LLC ("Penn Debtor") executed a certain Forbearance Agreement in connection with nineteen (19) Business Loan Agreements ("Forbearance Agreement"). The Forbearance Agreement contains what is purported to be a "Release of Lenders". *See* page 15, paragraph 11, Exhibit C to Complaint.

The purported "Release of Lenders" in the Modification and Forbearance Agreements (collectively, the "Releases") if enforceable would only be enforceable against the two respective Debtors, Pier Debtor and Penn Debtor. Releases are a creature of contract law. A "release is … a species of contract" that "is governed by the same principles of law applicable to other contracts." *Schuman v. Gallet, Dreyer & Berkey, L.L.P.*, 180 Misc. 2d 485, 487 (N.Y. Co. 1999), *aff'd*, 280 A.D.2d 310 (1st Dept. 2001). A nonparty to a contract is not bound by that contract, nor the provisions contained therein.

In addition, a release is not binding upon the parties if it was executed and procured by fraud. *See Lombardo v. Flynn*, 748 F. App'x 434 (3d Cir. 2019) (*citing Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975) *citing Kent v. Fair*, 392 Pa. 272, 140 A.2d 445 (1958). Sharestates forced the Debtors into the Modification and Forbearance Agreements to obtain protective releases for past misconduct, material misrepresentations, and claims of lender liability. The actual modifications and forbearances provided to the Debtors were merely illusory. Thus, the Releases are unenforceable.

Here, the Releases were part of a Modification Agreement executed by the Pier Debtor and a Forbearance Agreement executed by Penn Debtor. The other four (4) Debtor entities are not parties to either Agreement and they cannot be bound by the Releases. In addition, the Releases are inapplicable to post-petition debtors-in-possession Pier Debtor and Penn Debtor, because a pre-petition debtor cannot release claims that belong to a debtor-in-possession.

> i. **Pre-petition releases are not enforceable against Debtors-In-Possession.**

Post-petition avoidance actions "can only be brought by the trustee after the petition is filed . . . and the [pre-petition debtor] does not own the right to pursue a fraudulent transfer claim in bankruptcy." *Official Comm. of Unsecured Creditors v. UMB Bank (In re Residential Capital, LLC)*, 497 B.R. 403, 414 (Bankr. S.D.N.Y. 2013); *In Guttman v. Fabian (In re Fabian)*, 458 B.R. 235, 258 (Bankr. D.Md. 2011) ("A bankruptcy trustee's causes of action to recover fraudulent conveyances and preferential transfers, are independent of, and separate from, prepetition causes of action possessed by the debtor outside of bankruptcy. These actions arise after the petition date, and therefore are not themselves property of the estate."). It follows that the pre-petition debtor cannot waive such claims either.

Courts have held that the pre-petition debtor may not waive such claims either. This is because the "avoidance powers under the Code are within the unique purview of the trustee, and courts have noted that 'prior to bankruptcy a debtor may not waive bankruptcy rights that inure to the benefit of unsecured creditors not a party to that waiver.'" *PAH Litig. Tr. v. Water St. Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.)*, Nos. 13-12965(KG), 15-51238(KG), 2016 Bankr. LEXIS 2810, at *53-54 (Bankr. D. Del. June 20, 2016) (citing *Minnesota Corn Processors, Inc. v. American Sweeteners, Inc. (In re American Sweeteners Inc.)*, 248 B.R. 271, 276 (Bankr. E.D. Pa. 2000).

*In re Physiotherapy* has been the rational for other courts to determine that regardless of the impact of the releases on the underlying contractual claim or defenses, the releases could not have waived any avoidance actions. "This is because avoidance causes of action belong to the estate and may only be asserted or waived by a representative of the estate, i.e., a trustee or debtor in possession. The Debtor could not have waived any such action because prepetition the estate did not exist, and the Debtor was not the debtor in possession." *In re Figueroa Mt. Brewing, LLC*, No. 9:20-bk-11208-MB, 2021 Bankr. LEXIS 1775, at *39-40 (Bankr. C.D. Cal. July 2, 2021), *see In re Physiotherapy*, 2016 Bankr. LEXIS 2810, at *53-54. *In re Figueroa* is incredibly instructive on unenforceable waivers and releases, disputed secured claims subject to avoidance actions, and the Court's denial of the secured creditors opportunity to credit bid under § 363(k) of the Bankruptcy Code.

Avoidance causes of action under the bankruptcy code are property of the trustee or debtor-in-possession, and any recovery on a chapter 5 cause of action is estate property for the benefit of all creditors. 11 U.S.C. § 541(a)(3), and (4). There is an important distinction between § 541 causes of action, which are pre-bankruptcy debtor causes of action that come into the estate under § 541

5

of the Bankruptcy Code upon the filing of a petition, and estate causes of action created by the Bankruptcy Code. Because of their different origin, chapter 5 claims cannot "be confused with the separate authority of a trustee or debtor-in-possession to pursue the pre-petition debtor's causes of action that become property of the estate upon the filing of the bankruptcy petition." *Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics)*, 226 F.3d 237, 243 (3d Cir. 2000).

### ii. The Releases Are Avoidable Under §§ 544, 548 and PUVTA.

The chapter 5 claims asserted in the Complaint were not released pre-petition because they belonged to the respective Debtor-in-Possession, and the Releases are unenforceable against the Pier Debtor and Penn Debtor, and thus can be avoided under the Bankruptcy Code and Pennsylvania Uniform Voidable Transfer Act ("PUVTA"). The Complaint asserts claims to avoid the Releases pursuant to 11 U.S.C. §§ 544, 548 and PUVTA. These federal and state laws permit the Debtors to avoid transfers made while insolvent if the Debtors did not receive reasonably equivalent value in exchange.

A pre-petition cause of action is property of the estate. *In re e2 Commc'ns, Inc.*, 320 B.R. 849, 855 (Bankr. N.D. Tex. 2004); *See, e.g., Wischan v. Adler (In re Wischan)*, 77 F.3d 875, 877 (5th Cir.1996) (stating that pre-petition causes of action are property of the estate); *Am. Nat'l Bank of Austin v. Mortgage Am. (In re Mortgage Am. Corp.)*, 714 F.2d 1266, 1277 (5th Cir.1983) (stating that a state cause of action is property of the estate "within the meaning of section 541(a)(1) of the Code").

"Common sense suggests that a release of claims is a "transfer" of property—*i.e.,* a method of "disposing of or parting with" property, as the releasing party gives up the right to assert the claims in the future." *In re e2 Commc'ns, Inc.*, 320 B.R. at 856. Courts that have addressed this question have held similarly. *Chiasson v. Strachan Shipping Co. (In re Massan Shipping Indus.)*,

6

272 B.R. 625, 630 (E.D.La. 2001); *First Trust Nat'l Ass'n v. Am. Nat'l Bank & Trust Co. (In re Adventist Living Ctrs., Inc.)*, 174 B.R. 505, 517 (Bankr. N.D.Ill. 1994); *In re NuMed Home Health Care, Inc.*, 326 B.R. 859, 865 (Bankr. M.D. Fla. 2005) (claim to avoid release of causes of action survived Rule 12(b)(6) challenge where complaint pled insolvency and lack of reasonably equivalent value).

Determination of "reasonably equivalent value" under § 548(a)(1)(B) is a two-step process. *Anand v. Nat'l Republic Bank of Chi.*, 239 B.R. 511, 516–17 (N.D.Ill.1999). "A court must first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up." *In re Knippen*, 355 B.R. 710, 726 (Bankr. N.D. Ill. 2006), *aff'd sub nom. Knippen v. Grochocinski*, 2007 WL 1498906 (N.D. Ill. May 18, 2007) *citing Anand v. Nat'l Republic Bank of Chi.,* 239 B.R. at 517. The first step addresses whether there was any consideration for a transfer at all. The second step evaluates the sufficiency of that consideration. "Indirect benefits" including value provided to affiliates or owners "may be considered as part of the inquiry into reasonably equivalent value in a transaction." *In re Image Worldwide, Ltd.*, 139 F.3d 574, 579 (7th Cir. 1998).

Absent the Releases, the Pier and Penn Debtors possessed a clear right to bring the state law claims in the Complaint. Within two (2) years of the Petition Date, Pier and Penn Debtors signed the Releases, which caused them to part with claims against Sharestates. The consideration for the exchanges was one-sided, therefore it is difficult to describe what value either Debtor received. Pier Debtor waived reimbursement of two million dollars ($2,000,000.00) but the loan amount was not reduced. Pier Debtor surrendered significant causes of action, entered into a modified loan structure and a modified draw process that substantially changed its loan terms, and pro-Sharestates modified draw process. Under the Forbearance Agreement, Penn Debtor waived

7

any defenses, claims, counterclaims, right of recoupment or set-off against Sharestates and Intercap, surrendered significant causes of action, entered into a modification of its loans, increased its overall liabilities without receiving even a reasonably equivalent value in return.

In exchange they received a short period of time where Sharestates would not attempt to foreclose. This breathing spell provided the Debtors no value whatsoever; breathing spells only provide value when they give a borrower some real practical potential to make necessary financing or operational changes. At the time, both of the Debtors' assets were over-encumbered, and would receive 5% less funding, while Sharestates had complete knowledge of the finances of the Debtors, their affiliates, and owners. The modified draw process the 80% LTV was no longer reimbursed 100% up front, and now the Debtors were required to pay 25% of the costs from the beginning of the loan through completion, money Sharestates knew they did not have and could not get. Sharestates would not fund the remaining 75% of the loans. The draw process became more arduous, imposing additional requirements on the contractors, and virtually impossible to obtain the draws. The practical effect of the breathing spell – even without the benefit of hindsight – was really for the benefit of Sharestates, and merely to delay an inevitable default. The Forbearance and Modification Agreements provided the Debtors with insufficient value and effected the transfer of valuable causes of action while the Debtors were insolvent. Sharestates cannot establish that any value it conferred on the Debtors was given in good faith. Sharestates used the Modification and Forbearance Agreements to exert additional financial and operational control over Pier and Penn, exacerbating their financial difficulties, and increased their indebtedness to Sharestates. There is ample evidence of a genuine dispute based on § 548 avoidance actions and that Releases must be avoided, and "cause" pursuant to § 363(k) to deny Sharestates right to credit bid.

B. **Avoidance of mortgages is permissible under § 544 of the Bankruptcy Code.**

The Debtors seek avoidance under 11 U.S.C. § 544 of the thirty-seven (37) individual mortgages on the 1121 Penn N. Delaware Avenue, Philadelphia Property ("1121 Pier Property") that were recorded prior to the Modification Agreement which changed the material terms of the underlying loan documents and promissory note.

A debtor-in-possession may avoid a transfer if such transfer would be avoidable by a hypothetical lien or execution creditor or a bona fide purchaser of real property. 11 U.S.C. §544(a)(1), (2), (3). The Debtor may avoid the Pier Village Mortgages because a petition-date lienholder would have superior rights, given that the underlying obligation was modified to the detriment of junior creditors. The Debtor may also avoid the Pier Village Mortgages because the recorded mortgages secure a materially different underlying obligation than that described in the mortgages, and a bona fide purchaser would not have notice of the actual obligation purportedly secured.

    i. **Junior Lienholders Have Superior Priority**

Lien priority in Pennsylvania is generally determined by the timing of recordation. 42 Pa.C.S. § 8141(2) ("Liens against real property shall have priority over . . . Other mortgages and defeasible deeds in the nature of mortgages, from the time they are left for record.").

Pennsylvania has long recognized that a mortgage secures only the obligations referenced by the recorded document; additional obligations are considered newly imposed and are subordinate to an intervening interest holder. *Ter-Hoven v. Kerns*, 2 Pa. 96, 100 (1845) ("there appears to be no good or just reason why [a senior lienholder] should be regarded otherwise, in making future advances, than if he were making advances to the party for the first time.")

9

*Ter-Hoven* dealt with discretionary advances under an existing loan document, and the rationale to impose lesser priority is even stronger if the existing terms are fundamentally modified. "If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests..." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) §7.3 (1997). This principle has been widely adopted. *See Burney v. McLaughlin*, 63 S.W.3d 223, 230, 232-33 (Mo. Ct. App. 2001) (even where the senior mortgagee was permitted under the terms of the contract to modify its mortgage without notice to or the consent of a junior creditor, where the modifications that increased the interest rate and added appraisal, loan-term extension and renewal fees materially impaired the interests of a junior creditor, the court applied § 7.3 of the Restatement and subordinated the modifications to the junior lienor's interests); *Shultis v. Woodstock Land Dev. Assocs.*, 188 A.D.2d 234, 594 N.Y.S.2d 890, 892 (1993) (noting long line of New York state cases applying equitable subordination doctrine to hold that modifications to senior mortgage of increased interest rate and loan-term extension required junior lienor's consent); *Lennar Ne. Partners v. Buice*, 49 Cal.App.4th 1576, 57 Cal. Rptr. 2d 435, 440 (1996) (noting California state court cases applying equitable subordination doctrine to find that modification to a senior deed of trust that increased the interest rate and the principal balance with additional advances substantially impaired the junior lienholder's rights and security, and to hold that priority of senior creditor's modification was to be re-ordered); *Fraction v. Jacklily, LLC.*, 2021 WL 4037508, at *3 (E.D. Pa. Sept. 3, 2021) (finding no prejudice to junior interest holder under Restatement §7.3).

The Complaint pleads that "Following the recording of the Pier Village Mortgages, Pier Debtor entered into the Modification Agreement with Sharestates. Sharestates did not record new

mortgages consistent with the Modification." Complaint ¶¶ 109, 110. The Modification with Sharestates materially altered the terms of the loans, including lowering the amount they would fund, requiring the Debtor to fund an additional 5% before the loan funds would be released, changing the draw process to an escrow reimbursement-based model, and requiring the Debtor to release any existing causes of action related to Sharestates' non-contractual requirement, and waive a $2 million reimbursement due to Pier Debtor. Sharestates also reneged on its commitment to refinance the funding from Stewart on 20 lots. After the Modification of the underlying loan documents, Pier Debtor was required to use a riskier draw process that Sharestates knew was destined to fail. Pier Debtor gave up the right to a valid reimbursement it needed to pay present contractors. Pier Debtor could not challenge earlier misconduct that Sharestates used to maximize extension fees and interest charges. These changes increased the likelihood that Pier Debtor would default on its debt. The Modification worked solely to the detriment of junior interest holders.

    **ii.**   **Had No Notice of the Underlying Obligation**

"An innocent purchaser for value, having neither actual nor constructive knowledge of claims of a third party, holds the title acquired free of any such secret equities." *Lund v. Heinrich*, 410 Pa. 341, 346 (Pa. 1963).

A mortgage is a recorded document that provides constructive notice that a specifically identified property is encumbered by a lien that secures some identified underlying obligation. Pennsylvania's recording statute provides that:

> Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under

11

>which such subsequent purchaser, mortgagee, or judgment creditor shall claim."

21 P.S. § 351.

If the underlying obligation is fundamentally altered, consistent with the result *in Ter-Hoven*, the altered obligations are new obligations. New, unrecorded obligations constitute a new conveyance or contract, and an old mortgage does not provide constructive notice to a purchaser.

A bona fide purchaser is entitled to rely on the public record. Pennsylvania does not impose a requirement on a purchaser to exhaustively review every possible encumbrance hinted at in the public record; that would "place an undue and unrealistic burden on the record examiner to uncover an unrecorded" document impacting title. *Mid-State Bank & Tr. Co. v. Globalnet Int'l, Inc.*, 710 A.2d 1187, 1192 (Pa. Super. Ct. 1998), *aff'd*, 557 Pa. 555, 735 A.2d 79 (1999).

The Pier Village Mortgages were modified into a fundamentally different agreement without subsequent recordation. The existing Pier Village Mortgage does not put the world on notice of this new agreement and new obligations, thus a bona fide purchaser would take title free and clear. The Debtor may avoid the Pier Village Mortgages.

## V. **CONCLUSION**

For the reasons set forth above, the Debtors have valid claims against Sharestates and there is a genuine dispute as to Sharestates claims. As a result of Sharestates lending practices and fraudulent Lender Releases and Mortgages, the Lender Releases are not enforceable against the Pier and Penn Debtors, or the Debtors-in-Possession are not bound by the Lender Releases, the Mortgages on the Pier Property are avoidable, and the Lender Releases are avoidable under 11 U.S.C. § 548. Sharestates bad acts provide cause for this Court to deny Sharestates ability to credit bid in these bankruptcy case.

                                                    **BIELLI & KLAUDER, LLC**

Dated: November 12, 2021                */s/ Thomas D. Bielli*
                                                    Thomas D. Bielli, Esquire
                                                    1905 Spruce Street
                                                    Philadelphia, PA 19103
                                                    Phone: (215) 642-8271
                                                    Email: tbielli@bk-legal.com